234 N.J. Super. 331 (1989)
560 A.2d 1250
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PAUL DOMINIC BULU, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1989.
Decided July 11, 1989.
*334 Before Judges MICHELS, LONG and MUIR, Jr.
Marsha Wenk, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Sheri Woliver, Deputy Public Defender, of counsel; Marsha Wenk, on the brief).
Frank J. Bucsi, Senior Assistant Prosecutor, argued the cause for respondent (Richard C. Hare, Warren County Prosecutor, attorney; Frank J. Bucsi, of counsel and on the letter brief).
Lisa Sarnoff Gochman, Deputy Attorney General, argued the cause for amicus curiae Peter N. Perretti, Jr., Attorney *335 General of New Jersey, (Peter N. Perretti, Jr., attorney; Lisa Sarnoff Gochman, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
The significant issue posed by this appeal is whether a mandatory Drug Enforcement and Demand Reduction (DEDR) penalty may be assessed, pursuant to N.J.S.A. 2C:35-15a, against a defendant who has been charged with drug offenses and subsequently is admitted into a Pretrial Intervention (PTI) program.
The record shows that on August 11, 1988, New Jersey State Troopers Salamone and Moyna were on a routine check of the westbound rest area of Interstate Route 80 in Allamuchy Township. While driving past defendant Paul Dominic Bulu's parked automobile, the troopers noticed defendant look at them, bow his head and then duck down in the passenger seat leaving only the top of his head visible. When the troopers approached defendant's car to question him about his actions, they noticed that his voice was muffled and that he had a bulge in his cheek. The troopers also observed a package of "rolling papers" between the seat belt coil and the headliner of the car.
Defendant was ordered out of his car and told to open his mouth. Inside defendant's mouth, the troopers observed a clear plastic bag containing what was later determined to be 0.46 grams of marijuana. Defendant spit the bag into his hands and then tore it open, scattering most of its contents. Defendant was placed under arrest and the passenger compartment of the vehicle was searched. Inside the center console the troopers found a marijuana pipe and a film canister holding a clear plastic bag containing what was later determined to be 0.33 grams of cocaine. A buck knife was found between the driver's seat and the door and a butterfly knife was found in the glove compartment. Defendant consented to a search of *336 the remainder of the vehicle and no additional contraband was recovered.
Three separate complaints were issued against defendant. The first complaint charged defendant with (1) possession of a controlled dangerous substance, to wit, cocaine, in violation of N.J.S.A. 2C:35-10a(1) (First Count); (2) possession of a buck knife without any explainable lawful purpose, in violation of N.J.S.A. 2C:39-3e (Second Count), and (3) possession of a butterfly knife without any explainable lawful purpose, in violation of N.J.S.A. 2C:39-3e (Third Count). The second complaint charged defendant with suppression, by way of concealment or destruction, of evidence of a crime which might aid in the discovery or apprehension of such person or in the lodging of a charge against him, in violation of N.J.S.A. 2C:29-3a(3). The third complaint charged defendant with (1) possession of a controlled dangerous substance, to wit, less than 50 grams of marijuana, in violation of N.J.S.A. 2C:35-10a(4) (First Count), and (2) possession of narcotics paraphernalia, in violation of N.J.S.A. 2C:36-2 (Second Count).
Defendant was accepted into the Warren County PTI Program and further criminal proceedings were postponed for one year. Shortly thereafter, defendant was advised that two conditions to his admission into PTI inadvertently had been omitted from the Order of Postponement. Specifically, defendant was informed that the Order of Postponement failed to indicate that he was required to pay a mandatory $1,000 DEDR penalty pursuant to N.J.S.A. 2C:35-15a(3) and two $50 forensic laboratory analysis fees pursuant to N.J.S.A. 2C:35-20a. After a hearing, the trial court denied defendant's request for relief and ruled that payment of DEDR penalty and laboratory fees were a condition of defendant's admission into PTI. We granted defendant leave to appeal and stayed payment of the DEDR *337 penalty and fees pending disposition of the appeal.[1]
Defendant seeks a judicial declaration that the portion of N.J.S.A. 2C:35-15 that mandates the imposition of a DEDR penalty upon individuals placed into supervisory treatment pursuant to N.J.S.A. 2C:43-12 is unconstitutional, and an order relieving him of the obligation to pay such penalty. Defendant first contends that the imposition or assessment of a DEDR penalty against him violates procedural and substantive due process of law. Specifically, he claims that DEDR penalties are punitive in nature and, therefore, may not be imposed absent a finding of guilt beyond a reasonable doubt. We disagree.
N.J.S.A. 2C:35-15 of the Comprehensive Drug Reform Act of 1986, N.J.S.A. 2C:35-1 et seq., provides:
a. In addition to any disposition authorized by this title, the provisions of section 24 of P.L. 1982, c. 77 (C. 2A:4A-43), or any other statute indicating the dispositions that can be ordered for an adjudication of delinquency, every person convicted of or adjudicated delinquent for a violation of any offense defined in this chapter or chapter 36 of this title shall be assessed for each such offense a penalty fixed at:
(1) $3,000.00 in the case of a crime of the first degree;
(2) $2,000.00 in the case of a crime of the second degree;
(3) $1,000.00 in the case of a crime of the third degree;

(4) $750.00 in the case of a crime of the fourth degree;

*338 (5) $500.00 in the case of a disorderly persons or petty disorderly persons offense.
Every person placed in supervisory treatment pursuant to the provisions of N.J.S. 2C:36A-1 or N.J.S. 2C:43-12 for a violation of any offense defined in this chapter or chapter 36 of this title shall be assessed the penalty prescribed herein and applicable to the degree of the offense charged, except that the court shall not impose more than one such penalty regardless of the number of offenses charged. If the person is charged with more than one offense, the court shall impose as a condition of supervisory treatment the penalty applicable to the highest degree offense for which the person is charged.
All penalties provided for in this section shall be in addition to and not in lieu of any fine authorized by law or required to be imposed pursuant to the provisions of N.J.S. 2C:35-12.
b. All penalties provided for in this section shall be collected as provided for collection of fines and restitutions in section 3 of P.L. 1979, c. 396 (C. 2C:46-4), and shall be forwarded to the Department of Law and Public Safety as provided in subsection c. of this section.
c. All moneys collected pursuant to this section shall be forwarded to the Department of Law and Public Safety to be deposited in a nonlapsing revolving fund to be known as the "Drug Enforcement and Demand Reduction Fund."

d. All moneys, including fines and restitution, collected from a person convicted of or adjudicated delinquent for an offense or placed in supervisory treatment pursuant to N.J.S. 2C:43-12 shall be applied first to any Violent Crimes Compensation Board penalty imposed pursuant to section 2 of P.L. 1979, c. 396 (C.2C:43-3.1), and shall next be applied to any forensic laboratory fee assessed pursuant to N.J.S. 2C:35-20, and shall next be applied to any penalty imposed pursuant to this section.

e. The court may suspend the collection of a penalty imposed pursuant to this section; provided the defendant agrees to enter a residential drug rehabilitation program approved by the court; and further provided that the defendant agrees to pay for all or some portion of the costs associated with the rehabilitation program. In this case, the collection of a penalty imposed pursuant to this section shall be suspended during the defendant's participation in the approved rehabilitation program. Upon successful completion of the program, the defendant may apply to the court to reduce the penalty imposed pursuant to this section by any amount actually paid by the defendant for his participation in the program. The court shall not reduce the penalty pursuant to this subsection unless the defendant establishes to the satisfaction of the court that he has successfully completed the rehabilitation program. If the defendant's participation is for any reason terminated before his successful completion of the rehabilitation program, collection of the entire penalty imposed pursuant to this section shall be enforced. Nothing in this section shall be deemed to affect or suspend any other criminal sanctions imposed pursuant to this chapter or chapter 36 of this title. [Emphasis added].
*339 Thus, N.J.S.A. 2C:35-15a requires the imposition of a DEDR penalty upon (1) every person convicted of an offense defined in Chapters 35 or 36 of Title 2C; (2) every person adjudicated delinquent for a violation of an offense defined in Chapter 35 or 36 of Title 2C, and (3) every person charged with an offense defined in Chapters 35 or 36 of Title 2C who subsequently, as a result, is placed in supervisory treatment pursuant to N.J.S.A. 2C:36A-1 or N.J.S.A. 2C:43-12 (PTI).
N.J.S.A. 2C:35-15d and N.J.S.A. 2C:35-15e provide for situations where a person who has been assessed a DEDR penalty is unable to pay the entire penalty. N.J.S.A. 2C:35-15d indicates that all moneys collected from a person should be applied first toward the payment of any Violent Crimes Compensation Board (VCCB) penalty imposed pursuant to N.J.S.A. 2C:43-3.1, then toward the payment of any forensic laboratory analysis fee assessed pursuant to N.J.S.A. 2C:35-20 and, finally, toward the payment of any DEDR penalty. N.J.S.A. 2C:35-15e allows the trial court to suspend payment of, or reduce the amount of, a DEDR penalty if the person who has been assessed the penalty agrees to enter a drug rehabilitation program and assume all or part of the cost of the program.
N.J.S.A. 2C:35-20, which mandates the imposition of forensic laboratory analysis fees, provides in pertinent part:
a. In addition to any disposition made pursuant to the provisions of N.J.S. 2C:43-2, any person convicted of an offense under this chapter shall be assessed a criminal laboratory analysis fee of $50.00 for each offense for which he was convicted. Any person who is placed in supervisory treatment pursuant to N.J.S. 2C:36A-1 or N.J.S. 2C:43-12 shall be assessed a criminal laboratory analysis fee of $50.00 for each such offense for which he was charged. [Emphasis added].
Consequently, under N.J.S.A. 2C:35-20a, a $50 criminal laboratory analysis fee, per offense, is imposed upon (1) any person convicted of an offense defined in Chapter 35, Title 2C and (2) any person charged with an offense defined in Chapter 35, Title 2C who subsequently is placed in supervisory treatment pursuant to N.J.S.A. 2C:36A-1 or N.J.S.A. 2C:43-12 (PTI).
*340 The legislative purpose of the Comprehensive Drug Reform Act of 1986 is made clear in the statement of policy accompanying the Act that is set forth at N.J.S.A. 2C:35-1.1. This statement provides in pertinent part:
It is the intention of the Legislature to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders, and to facilitate where feasible the rehabilitation of drug dependent persons so as ultimately to reduce the demand for illegal controlled dangerous substances and the incidence of drug-related crime. [Emphasis added].
The mandatory DEDR penalties collected pursuant to N.J.S.A. 2C:35-15a are forwarded to the Department of Law and Public Safety and deposited into the "Drug Enforcement and Demand Reduction Fund." N.J.S.A. 2C:35-15c. The nature and purpose of this fund is described in the Commentary to the Comprehensive Drug Reform Act of 1986 (Assembly Commentary) that was issued by the Assembly Judiciary Committee in November 1987. The Assembly Commentary provides in pertinent part:
Subsections b. and c. of this section provide for the collection and disposition of all DEDR penalties. Specifically, all monies collected pursuant to this section are to be forwarded to a newly created revolving fund in the Department of Law and Public Safety to [be] known as the "Drug Enforcement and Demand Reduction Fund." These monies, in turn, are to be used to fund enforcement efforts and educational, public awareness, rehabilitation or other public programs designed to prevent drug abuse. [Assembly Commentary at 32 (Emphasis added).]
In view of the above stated policy, we are satisfied that DEDR penalties are not punitive in nature. Rather, these penalties serve a general rehabilitative or preventative function in that they fund "enforcement efforts and educational, public awareness, rehabilitation or other public programs designed to prevent drug abuse." Assembly Commentary, supra, at 32.
To the extent, however, that DEDR penalties may entail certain aspects of punishment, such penalties need not be considered predominantly penal in nature. See e.g., State v. Harris, 70 N.J. 586, 592-593 (1976) (where our Supreme Court noted that restitution, as a condition of probation, is rehabilitative in nature); State v. Rhoda, 206 N.J. Super. 584, 590 (App. *341 Div. 1986), certif. den., 105 N.J. 524 (1986) (where we noted that restitution is predominantly nonpenal in nature even though it has aspects of rehabilitation and deterrence, both of which also are aspects of punishment). See also State v. Paladino, 203 N.J. Super. 537, 547 (App.Div. 1985).
In any event, the imposition of DEDR penalties as a condition of entry into a PTI program is permissible and does not violate procedural due process. An applicant who is denied admission into PTI is provided an avenue by which he may challenge the denial. Initially, a PTI program director or prosecutor who denies admission into PTI must "precisely state his findings and conclusion which shall include the facts upon which the application is based and the reasons offered for the denial." N.J.S.A. 2C:43-12f. Thereafter, an aggrieved applicant may file a motion for review of this denial before the designated or assignment judge. N.J.S.A. 2C:43-12f. While the judge's affirmance of the denial is not subject to direct appellate review, such determination is reviewable on appeal from a judgment of conviction, even if the judgment has been entered pursuant to a guilty plea. R. 3:28(f) and (g).
Furthermore, the procedural safeguards built into the PTI system are more than sufficient to satisfy the notice and hearing requirements of procedural due process. In this regard, it should be remembered that PTI "represents a procedural alternative to the traditional system of prosecuti[on]." State v. Leonardis (Leonardis I), 71 N.J. 85, 92 (1976). "The constitution is not offended by the choice given defendants to go the route of full criminal prosecution or that of diversion." State v. Salomon, 229 N.J. Super. 472, 475 (App.Div. 1989) (citing McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971) and Jenkins v. Anderson, 447 U.S. 231, 236, 100 S.Ct. 2124, 2128, 65 L.Ed.2d 86 (1980)). Moreover, as an alternative to prosecution, PTI is wholly optional and defendants who choose it must accept its terms. State v. Salomon, supra, 229 N.J. Super. at 475.
*342 We also are satisfied, contrary to defendant's claim, that the imposition of DEDR penalties upon PTI enrollees does not violate substantive due process. The Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1, of the New Jersey Constitution protect against unjustified state regulation of an individual's rights. Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985). See also Katobimar Realty Co. v. Webster, 20 N.J. 114 (1955). Generally, a statute is not violative of substantive due process if it is reasonably related to a legitimate legislative purpose and is neither arbitrary nor discriminatory. Greenberg v. Kimmelman, supra, 99 N.J. at 563 (citing Nebbia v. New York, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940, 957 (1934)). In other words, "if a statute is supported by a conceivable rational basis, it will withstand a substantive due process attack." Greenberg v. Kimmelman, supra, 99 N.J. at 563.
A statute is presumed constitutional and the burden is on the party challenging it to prove otherwise. Piscataway Tp. Bd. of Ed. v. Caffiero, 86 N.J. 308, 318 (1981), app. dism. 454 U.S. 1025, 102 S.Ct. 560, 70 L.Ed.2d 470 (1981). "Due process requires `only that a law shall not be unreasonable, arbitrary or capricious, and that the means selected shall bear a rational relation to the legislative object sought to be obtained.'" Piscataway Tp. Bd. of Ed. v. Caffiero, supra, 86 N.J. at 318 (quoting Robson v. Rodriquez, 26 N.J. 517, 522 (1958)). If a statute does not violate the Constitution, but is merely unwise or based on bad policy, then it is not for a court to question. Piscataway Tp. Bd. of Ed. v. Caffiero, supra, 86 N.J. at 318. See also Town Tobacconist v. Kimmelman, 94 N.J. 85 (1983). Consequently, a court should look not to the wisdom of the legislative action, but rather to whether the action is within constitutional limitations. Piscataway Tp. Bd. of Ed. v. Caffiero, supra, 86 N.J. at 318.
DEDR penalties are intended to serve a general rehabilitative or preventative function in that they fund "enforcement efforts *343 and educational, public awareness, rehabilitation or other public programs designed to prevent drug abuse." Assembly Commentary, supra, at 32. Certainly, such goals are legitimate legislative objectives and the requirement that the achievement of these objectives be funded by individuals convicted of drug offenses, juveniles adjudicated delinquent on the basis of drug offenses and PTI enrollees who have been charged with drug offenses is rationally related to the achievement or furtherance of these objectives and is neither arbitrary nor discriminatory.
Defendant also contends that the imposition of DEDR penalties upon PTI enrollees violates equal protection. He argues that indigent defendants who are unable to pay a DEDR penalty "may be forced to forego the benefit of PTI, or be terminated for failure to pay," and that "the punitive impact of the penalty, if paid, disparately [a]ffects indigent defendants such that it is qualitatively and quantitatively different." He also argues that imposition of the DEDR penalties upon PTI enrollees does not bear a rational or substantial relationship to the legislative objective of either PTI or the Comprehensive Drug Reform Act, and constitutes a gross abuse of legislative discretion. Finally, defendant argues that the imposition of DEDR penalties upon PTI enrollees violates equal protection in that it is a punishment imposed upon one who is presumed innocent and that he, as a PTI enrollee who has been charged with a drug offense, is being treated differently than all other PTI enrollees because his admission into PTI is subject to payment of a "mandatory and excessive penalty."
The Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution require that the Legislature "write evenhandedly." Greenberg v. Kimmelman, supra, 99 N.J. at 562. Equal protection claims under the Fourteenth Amendment should be addressed in a three-tier approach. When the legislation regulates a fundamental right or disparately treats a suspect class it is subject to strict scrutiny. In this situation the legislation *344 must further a compelling interest and there must be no less-restrictive alternatives to accomplish that objective. San Antonio School District v. Rodriguez, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973), reh'g den., 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973); Barone v. Dept. of Human Services, 107 N.J. 355, 364-365 (1987); State in Interest of L.M., 229 N.J. Super. 88, 94 (App.Div. 1988), certif. den., 114 N.J. 485 (1989). When the legislation regulates a semi-suspect classification or affects a fundamental right in an indirect manner it is subject to intermediate scrutiny. In this situation the legislation must serve an important governmental objective and be substantially related to the achievement of that objective. Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976), reh'g den., 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977); Barone, supra, 107 N.J. at 365; State in Interest of L.M., supra, 229 N.J. Super. at 94. In all other situations the legislation is subject to a rational basis analysis. Under this standard of review, the legislation must be rationally related to the achievement of a legitimate state interest. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); Barone, supra, 107 N.J. at 365; State in Interest of L.M., supra, 229 N.J. Super. at 95.
When analyzing equal protection claims under the New Jersey Constitution, our courts apply an analysis similar to the one applied when analyzing claims under the United States Constitution. Barone, supra, 107 N.J. at 368-369; Right to Choose v. Byrne, 91 N.J. 287, 305-306 (1982). This analysis requires the balancing of "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Barone, supra, 107 N.J. at 368 (quoting Greenberg v. Kimmelman, supra, 99 N.J. at 567); State in Interest of L.M., supra, 229 N.J. Super. at 97. "The focus is on whether an appropriate governmental interest is suitably furthered by the disparate treatment embodied in the action complained of." State in Interest of L.M., supra, 229 N.J. Super. at 97 (citing Barone, supra, 107 N.J. at 368).
*345 Preliminarily, it is not at all clear that indigent defendants will be "forced to forego", or be terminated from, PTI if they are unable to pay a DEDR penalty. While N.J.S.A. 2C:35-15 generally sets forth the guidelines for imposition of mandatory DEDR penalties, N.J.S.A. 2C:35-15d and N.J.S.A. 35-15e anticipate the situation where a person is unable to pay all of a DEDR penalty imposed upon him. N.J.S.A. 2C:35-15d requires that moneys collected from a person admitted into PTI be disbursed first toward the payment of any VCCB penalty, then toward the payment of any forensic lab fee and, finally, toward the payment of any DEDR penalty. Since the disbursement priority of the monetary assessments is a factor only in a situation where less than the total amount assessed is available for disbursement, it is logical to assume that our Legislature envisioned a situation where a person is unable to pay all of a DEDR penalty.
N.J.S.A. 2C:35-15e provides a mechanism for suspension or reduction of a DEDR penalty. Under this subsection, the court may suspend the collection of a DEDR penalty if the person who was assessed the penalty agrees to enter a residential drug rehabilitation program and pay all, or some portion, of the cost of the program. Upon his successful completion of the program, the person may request that the court offset the amount he actually paid for the rehabilitation program against the DEDR penalty. This suspension or reduction mechanism is described in the following discussion of N.J.S.A. 2C:35-15e that is set forth in the Assembly Commentary:

Subsection e. of this section, finally, establishes the only mechanism for waiving or reducing the statutorily prescribed DEDR penalty. Specifically, a court may suspend the collection of the penalty where the defendant agrees to enter a drug rehabilitation program and where he agrees to assume all or some part of the financial burden of his participation in that program. It is not necessary under this subsection that the defendant bear the entire cost of the program. The specific rehabilitation program, moreover, must be approved by the court, although it need not necessarily be the same program as is contemplated or mandated by the provisions of N.J.S.A. 2C:35-14.

*346 Pursuant to this subsection, the court must still impose the applicable DEDR penalty at the time of sentencing. The execution or collection of that penalty, however, may be suspended during the defendant's continuing participation in the rehabilitation program. Where the defendant's payment to the program exceeds the statutorily prescribed DEDR penalty, the court may discharge the defendant's payment obligation entirely. Where, however, the defendant's participation is for any reason terminated before he has successfully completed the rehabilitation program, he will be required to pay the entire statutorily prescribed DEDR penalty, regardless of any payments which he may have made to enroll or participate in the program.
Thus, N.J.S.A. 2C:35-15d and N.J.S.A. 2C:35-15e provide an avenue whereby a person who is unable to pay a DEDR penalty may gain admission into, or avoid termination from, PTI. In this regard, defendant already has agreed to undergo "[s]ubstance abuse evaluation and any treatment deemed necessary" as a condition to his admission into PTI. Therefore, requiring defendant to submit to an approved residential drug rehabilitation program if he is unable to pay the DEDR penalty is entirely reasonable and squarely in line with a primary goal of PTI, the rehabilitation of drug offenders. Consequently, defendant's claim that indigents will be denied the benefit of PTI if they are unable to pay a DEDR penalty is without foundation in fact or law.[2]
In any event, defendant's claim that N.J.S.A. 2C:35-15a violates equal protection "as applied to indigents" is without merit. The only "unequal treatment" that a truly indigent defendant could receive under N.J.S.A. 2C:35-15 would be the requirement that he submit to a rehabilitation program as an alternative to payment of a DEDR penalty. This classification is certainly rationally related to the achievement of the legitimate objective of drug rehabilitation.
"A suspect class is one `saddled with such disabilities, or subjected to such a history of purposeful unequal *347 treatment or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" Barone, supra, 107 N.J. at 365 (quoting San Antonio School Dist. v. Rodriguez, supra, 411 U.S. at 28, 93 S.Ct. at 1294, 36 L.Ed.2d at 40). Poverty is not a suspect classification under the United States Constitution, Barone, supra, 107 N.J. at 365 (citing Schweiker v. Hogan, 457 U.S. 569, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982)), or under the New Jersey Constitution. Barone, supra, 107 N.J. at 369; Right to Choose v. Byrne, supra, 91 N.J. at 305. A fundamental right is one that is explicitly or implicitly guaranteed by the Constitution. San Antonio School Dist. v. Rodriguez, supra, 411 U.S. at 33, 93 S.Ct. at 1297, 36 L.Ed.2d at 43; Barone, supra, 107 N.J. at 365. Although PTI implicates important interests, State v. Senno, 79 N.J. 216, 226 (1979); Leonardis I, supra, 71 N.J. at 117, it does not have the status of a fundamental right. State v. Senno, supra, 79 N.J. at 227. Certainly then, the treatment accorded indigent defendants under N.J.S.A. 2C:35-15d and N.J.S.A. 2C:35-15e does not amount to a suspect classification, and defendant's claimed entitlement to the same treatment as non-indigent drug offenders does not amount to a fundamental right.
As noted above, the legislative classification embodied in N.J.S.A. 2C:35-15a requires the imposition of DEDR penalties upon convicted drug offenders, juveniles adjudicated delinquent on the basis of drug offenses and PTI enrollees who have been charged with drug offenses. N.J.S.A. 2C:35-15e provides for different treatment for PTI enrollees who are unable to pay the DEDR penalty. Since this classification is unquestionably rationally related to the legitimate governmental purpose of DEDR penalties, i.e., the funding of "enforcement efforts and educational, public awareness, rehabilitation or other public programs designed to prevent drug abuse," Assembly Commentary, supra, at 32, it does not violate federal equal protection guarantees. Moreover, a consideration of this "affected right" in view of the overwhelming "public need" for general *348 drug education and rehabilitation suggests that any minimal "intrusion" imposed upon defendant also is not violative of New Jersey equal protection guarantees.
Finally, we have carefully considered the remaining contentions and all the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2).
Accordingly, the order under review is affirmed.
NOTES
[1] Defendant appealed from the order of the Law Division that denied his application to be relieved of both the DEDR penalty and the forensic laboratory analysis fees. In his brief on appeal, however, he did not present any argument challenging the constitutionality of the imposition of the $50 forensic laboratory analysis fees pursuant to N.J.S.A. 2C:35-20a and, therefore, he is deemed to have abandoned any challenge with respect to that portion of the order. See Muto v. Kemper Reinsurance Co., 189 N.J. Super. 417, 420-21 (App.Div. 1983); Design-4 v. Masen Mountainside Inn, Inc., 148 N.J. Super. 290, 292 (App.Div. 1977), certif. den., 75 N.J. 6 (1977). In any event, defendant acknowledged in his brief that the imposition of such a fee is "arguably sustainable as an increased fee for administration of drug cases," and we are satisfied that there is no constitutional impediment to the imposition of a criminal laboratory analysis fee upon defendant or others who have been charged with drug offenses and subsequently admitted into a pretrial intervention program.
[2] Although N.J.S.A. 2C:35-15 makes no specific provision for the payment of DEDR penalties on an installment plan, it is reasonable to assume that such a plan could be established as a condition to PTI admittance. See N.J.S.A. 2C:46-1 (which allows installment payment of certain fines and restitution).