273 N.J. Super. 135 (1994)
641 A.2d 276
JAMES WILLIAM RINIER AND CARMELLA FORZIATI, PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 16, 1994.
Decided May 4, 1994.
*138 Before Judges KING, HAVEY and ARIEL A. RODRIGUEZ.
James William Rinier, pro se, submitted a brief on behalf of appellants.
Deborah T. Poritz, Attorney General of New Jersey, attorney for respondent (Joseph L. Yannotti, Assistant Attorney General, of counsel; Margaret A. Holland, Deputy Attorney General, on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
*139 Plaintiffs, husband and wife, filed a declaratory judgment action claiming that provisions of the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 to 54A:10-12, violate their federal equal protection and due process rights by requiring them to file a joint state income-tax return if they file a joint federal return. The consequence of filing a joint state return is that plaintiffs' aggregate income is subject to a higher tax rate. The Tax Court judge, Judge Lario, granted summary judgment to the State, finding that the provisions of the statute at issue were reasonably related to a legitimate governmental purpose. We agree and affirm.
Under N.J.S.A. 54A:8-3.1c, married persons filing a joint federal tax return must also file a joint New Jersey return. Effective January 1, 1991 (L. 1990, c. 61, § 12), N.J.S.A. 54A:2-1a and b, provide for different tax rates applicable to "married individuals filing a joint return" (subsection a) and "married individuals filing separately" (subsection b). The tax is computed in accordance with the following tables:

a. For married individuals filing a joint return ...
If the taxable income is: The tax is:
Not over $20,000.00 2% of taxable income
Over $20,000.00 but not over $400.00 plus 2.5% of the excess
$50,000.00 over $20,000.00
Over $50,000.00 but not over $1,150.00 plus 3.5% of the excess
$70,000.00 over $50,000.00
Over $70,000.00 but not over $1,850.00 plus 5.0% of the excess
$80,000.00 over $70,000.00
Over $80,000.00 but not over $2,350.00 plus 6.5% of the excess
$150,000.00 over $80,000.00
Over $150,000.00 $6,900.00 plus 7.0% of the excess
 over $150,000.00
b. For married individuals filing separately, ...
If the taxable income is: The tax is:
Not over $20,000.00 2% of taxable income
Over $20,000.00 but not over $400.00 plus 2.5% of the excess
$35,000.00 over $20,000.00
Over $35,000.00 but not over $775.00 plus 5.0% of the excess
$40,000.00 over $35,000.00
Over $40,000.00 but not over $1,025.00 plus 6.5% of the excess
$75,000.00 over $40,000.00
Over $75,000.00 $3,300.00 plus 7.0% of the excess
 over $75,000.00

*140 Prior to January 1, 1991, the State utilized only one tax-rate schedule. See N.J.S.A. 54A:2-1 (L. 1976, c. 47).[1]
Plaintiffs produced joint federal and New Jersey state income-tax returns setting forth their gross income as $66,129. After taking all "proper deductions and exemptions," their New Jersey gross income tax liability under N.J.S.A. 54:2-1a was $946. If plaintiffs were allowed to use the tax rates set forth in N.J.S.A. 54A:2-1b for married persons filing separately, their tax liability would have been $848.[2]
Plaintiffs argue that N.J.S.A. 54A:2-1 and N.J.S.A. 54A:8-3.1c violate their federal due process and equal protection rights because, by compelling them to file a joint return, they are subject to a greater tax liability than unmarried or married couples who both work but file separate federal returns. Plaintiffs label as unconstitutional any scheme which measures, for income-tax purposes, one spouse's income by reference to the other spouse's income.
Federal equal protection analysis employs different tiers of review. Drew Assocs. of NJ, LP v. Travisano, 122 N.J. 249, 258, 584 A.2d 807 (1991). When legislation regulates a fundamental right, or disparately treats a suspect class, it is subject to strict scrutiny. Ibid. See also, State v. Bulu, 234 N.J. Super. 331, 343, 560 A.2d 1250 (App.Div. 1989). Legislation which regulates a semi-suspect classification or affects a fundamental right in an indirect manner is subject to intermediate scrutiny; it must be shown that *141 the legislation serves an important governmental objective and is substantially related to the achievement of that objective. Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397, 407 (1976), reh. denied, 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977); Bulu, 234 N.J. Super. at 344, 560 A.2d 1250; In re L.M., 229 N.J. Super. 88, 94, 550 A.2d 1252 (App.Div. 1988), certif. denied, 114 N.J. 485, 555 A.2d 609 (1989).
In all other cases the rational-basis standard is applied, requiring only that there be some rational nexus between the state action and the legitimate state interest sought to be achieved. Drew Assocs., 122 N.J. at 258, 584 A.2d 807; New Jersey State Bar Ass'n v. Berman, 259 N.J. Super. 137, 145, 611 A.2d 1119 (App.Div. 1992). The rational-basis standard demands that the legislative act be "devoid of unreasonableness and arbitrariness and that means selected for fulfillment of policy bear a `real and substantial relation' to that end[.]" Drew Assocs., 122 N.J. at 259, 584 A.2d 807 (quoting Katobimar Realty Co. v. Webster, 20 N.J. 114, 123, 118 A.2d 824 (1955)). Stated differently, the question is whether there is any conceivable state of facts which would afford a rational basis for the classification. McKenney v. Byrne, 82 N.J. 304, 316, 412 A.2d 1041 (1980). The "equal protection safeguard is offended `only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective'". New Jersey State Bar Ass'n, 259 N.J. Super. at 146, 611 A.2d 1119 (quoting McGowan v. State of Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961)). Also, the rational-basis standard "is the functional equivalent of the due-process requirements of the fifth and fourteenth amendments." Drew Assocs., 122 N.J. at 258, 584 A.2d 807. Thus, while the equal protection and due-process clauses protect against different evils, analysis under both clauses may overlap. Id. at 258-59, 584 A.2d 807.
Plaintiffs argue that the strict scrutiny test should be employed because married persons are a suspect class. We disagree. Government regulations affecting marriage are not subject to strict scrutiny simply because the right to marry is a *142 fundamental right. Zablocki v. Redhail, 434 U.S. 374, 386-87, 98 S.Ct. 673, 681, 54 L.Ed.2d 618, 631 (1978); Califano v. Jobst, 434 U.S. 47, 53-54, 98 S.Ct. 95, 99-100, 54 L.Ed.2d 228, 235 (1977). The government may impose a reasonable regulation on marriages so long as the regulation does not significantly interfere with decisions to marry. Zablocki, 434 U.S. at 386-87, 98 S.Ct. at 681, 54 L.Ed.2d at 631. Only where the regulation presents a "direct" obstacle to marriage will the court apply a strict scrutiny standard. Mapes v. United States, 576 F.2d 896, 901, 217 Ct.Cl. 115 (Ct.Cl.), cert. denied, 439 U.S. 1046, 99 S.Ct. 722, 58 L.Ed.2d 705 (1978). See also, Druker v. Commissioner of Internal Revenue, 697 F.2d 46, 49-50 (2nd Cir.1982), cert. denied, 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983).
Here, the challenged provisions of the New Jersey tax place "no direct legal obstacle in the path of persons desiring to get married[.]" Zablocki, 434 U.S. at 387, n. 12, 98 S.Ct. at 681, 54 L.Ed.2d at 631. At most, the provisions impose an indirect burden suffered not from marrying, but "from marrying one in a particular income group." Mapes, 576 F.2d at 901. And, while that direct burden may, to some extent, affect the choice whether to marry, it leaves the ultimate choice to the individual. Druker, 697 F.2d at 50. We are, therefore, satisfied that the rational-basis, rather than the strict scrutiny standard, applies.[3]
We agree with Judge Lario that the rational-basis test is satisfied here. The federal equal-protection clause does not require that government treat all persons identically; it requires that differences in treatment of persons similarly situated be justified by appropriate state interest. Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 71 N.J. 249, 280-81, republished as *143 corrected, 80 N.J. 6, 364 A.2d 1016 (1976), cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). Also, where taxation is concerned and equal protection is implicated, the states have a large leeway in making classifications and drawing lines. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351, 354-55, reh. denied, 411 U.S. 910, 93 S.Ct. 1523, 36 L.Ed.2d 200 (1973); New Jersey State Bar Ass'n, 259 N.J. Super. at 146, 611 A.2d 1119.
The revenue from New Jersey's income tax is dedicated to "reducing or offsetting property taxes," N.J. Const. art. VIII, § 1, ¶ 7, a legitimate governmental goal. See Domenick v. Director, Div. of Tax., 176 N.J. Super. 121, 130, 422 A.2d 443 (App.Div. 1980). The legislative history of the 1990 amendment to N.J.S.A. 54A:2-1 establishes that the purpose of the two-rate schedules created by the amendment was to raise approximately $1.25 billion to "fund programs which provide permanent property tax reform." Assembly Appropriations Committee Statement for Assembly Bills 3607 and 3609, L. 1990, c. 61. The act upon which the amendment was a part was intended as a broad revision of the tax laws, aimed at providing "property tax relief to homeowners and residential tenants"; it combined changes to the homestead rebate program, increased the tax rates, and provided for "separate rate schedules designated by filing status, in order to make that tax more consistent with taxpayers' ability to pay." Ibid. Clearly, the changes, individually and collectively, are reasonably related to the State's goal of reducing property tax burdens.
The question is whether the requirement that joint state returns be filed when federal joint returns are filed has a rational nexus with the goal the State seeks to achieve. Stated differently, the question is whether there is any conceivable state of facts which would afford a rational basis for the classification. McKenney, 82 N.J. at 316, 412 A.2d 1041.
The State argues that the higher tax rates imposed on some married couples as a result of filing joint returns may be justified in terms of the reduced total costs associated with married couples *144 who typically share living expenses and thus have more disposable income.
While the State's assertion may have merit, it is not necessary that we endorse it in order to sustain the statutory scheme. We have held that "such factors as the ability to pay, degree of benefit ... and administrative convenience may well" be legitimate factors in making classifications and drawing lines under a taxation statute. New Jersey State Bar Ass'n, 259 N.J. Super. at 147, 611 A.2d 1119 (emphasis added). Here, the "administrative convenience" of having New Jersey taxpayers use the same filing status as they use when filing their federal tax returns would presumably increase uniformity in revenue-collecting procedures between the state and federal government. In fact, N.J.S.A. 54A:2-1 expressly states that, for income-tax purposes, New Jersey adopts the same measure of a "taxable year" as utilized by the federal government. Further, the State advises us that the IRS and New Jersey's Division of Taxation share auditing information. Thus, if taxpayers are required to use the same filing status for federal and state income taxes, the auditing process for both taxing agencies is more effective. In our view, this administrative convenience alone justifies the Legislature's classification by marital status.[4]
The fact that there may be an adverse tax consequence to some married couples arising from the marital-status classification does not render the tax scheme irrational. In the area of economics, a state does not violate equal protection "merely because the classifications made by its laws are imperfect." Dandridge *145 v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161-62, 25 L.Ed.2d 491, 501, reh'g denied, 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970). So long as the law has a reasonable basis, it will not offend the federal constitution "simply because the classification `is not made with mathematical nicety or because in practice it results in some inequality.'" Id. at 397 U.S. 485, 90 S.Ct. at 1161, 25 L.Ed.2d at 501-02 (quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 (1911)). As the United States Supreme Court stated in Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940):
It has ... been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.
See also, New Jersey State Bar Ass'n, 259 N.J. Super. at 146-47, 611 A.2d 1119; New Jersey State League of Municipalities v. State of New Jersey, 257 N.J. Super. 509, 518-20, 608 A.2d 965 (App.Div. 1992).
Consequently, the fact that a state's statutory classification may be "imperfect and imprecise" as applied to some married couples, does not justify its invalidation. Mapes, 576 F.2d at 903. There simply cannot be a "marriage-neutral tax system," and thus tax discrepancies will no doubt exist no matter how the rates are structured or classifications drawn. Id. at 904. The judiciary is not equipped, nor should it be inclined to tinker with taxpayer classification or rate-fixing decisions, reposed exclusively in the legislative branch. Druker, 697 F.2d at 50. For these reasons, other state courts have sustained tax provisions which resulted in enhanced tax liability to married couples. See Klein v. Iowa Dep't of Revenue & Finance, 451 N.W.2d 837, 842-43 (Iowa) (Iowa statute requiring spouses filing separate state returns to use standard deductions if either chooses to do so does not violate equal protection), cert. denied, 498 U.S. 852, 111 S.Ct. 145, 112 L.Ed.2d 111 (1990); Roberts v. State Tax Comm'n, 360 Mass. 724, *146 277 N.E.2d 499, 502-03 (1972) (state statute which required married taxpayers to file joint return in order to obtain refund did not deprive taxpayer of equal protection even though statute permitted divorced or legally separated person to file return individually and obtain refund).
Plaintiffs cite Hoeper v. Tax Comm'n of Wisconsin, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248 (1931), for the proposition that a two tax-rate system which effectively measures one spouse's income by reference to the other spouse is a violation of federal due process and equal protection. In Hoeper, a married taxpayer challenged a Wisconsin law which required that a spouse's separate income be aggregated for income-tax purposes. 284 U.S. at 212-13, 52 S.Ct. at 121, 76 L.Ed. at 249-50. The combined incomes were taxed at a higher rate than the rate applicable to the spouses' income were they to file separately. Ibid. In striking down the law, a majority of the Court stated that "any attempt by a state to measure the tax on one person's property or income by reference to the property or income of another is contrary to due process of law." 284 U.S. at 215, 52 S.Ct. at 122, 76 L.Ed. at 251. The Court noted its particular disapproval of Wisconsin's practice of taxing "as a joint income that which under [Wisconsin's] law is owned separately" in order to secure a higher income-tax revenue. 284 U.S. at 216, 52 S.Ct. at 122, 76 L.Ed. at 251.
The Court of Claims in Mapes questioned the continued viability of the majority opinion in Hoeper. See 576 F.2d at 902. In any event, Hoeper may be distinguished. The Wisconsin law in Hoeper provided no alternative to that of taxation combined income; in the New Jersey statutory scheme married taxpayers have a choice. If they choose to file separately for purposes of their federal tax return, they may file separately for state income-tax purposes and thus avail themselves of the potentially lower state tax rates. N.J.S.A. 54A:2-1b. However, if they choose to file a joint federal return, they presumably will receive some federal tax benefit, but must file a joint state return. The point is that it is their choice to make. We are entirely satisfied that under the *147 rational-basis analysis, plaintiffs have failed to "refute all possible rational bases for the differing treatment" among classes under the legislation. New Jersey State League of Municipalities, 257 N.J. Super. at 518, 608 A.2d 965. We therefore uphold the tax provisions at issue.
Affirmed.
NOTES
[1] N.J.S.A. 54A:2-1 was recently amended to reflect a five percent decrease in gross income-tax rates for taxable years 1994 and thereafter. (L. 1994, c. 2, eff. January 1, 1994). The decrease applies uniformly regardless of taxpayer's filing status and thus has no effect on plaintiffs' argument on appeal.
[2] Plaintiffs' tax returns are not part of the record and therefore the tax year is not disclosed.
[3] We find irrelevant plaintiffs' argument that the Rules of Professional Conduct governing attorneys consider as "misconduct" a lawyer's discrimination based on marital status. See R.P.C. 8.4(g). We also reject their assertion, made without reference to any statutory or common-law authority, that New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 to -42, elevates marital status to a suspect class.
[4] Plaintiffs filed a contemporaneous action in the United States District Court for the District of New Jersey challenging the "married tax penalty" under the Internal Revenue Code. In an unreported opinion, the District Court granted the government's motion for summary judgment dismissing the complaint. (92-1594) (August 21, 1992). The Third Circuit affirmed, and the Supreme Court has denied their petition for certiorari. Rinier v. United States of America, 995 F.2d 218 (3d Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 306, 126 L.Ed.2d 254 (1993).