607 A.2d 196

AMERICAN FIRE AND CASUALTY COMPANY, OHIO CASUALTY INSURANCE COMPANY, AND WEST AMERICAN INSURANCE COMPANY, APPELLANTS, v. NEW JERSEY DEPARTMENT OF INSURANCE, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 28, 1992—Decided May 19, 1992.

424

Before Judges ANTELL, BAIME and THOMAS.

*Alan H. Bernstein* argued the cause for appellants (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Alan H. Bernstein,* on the brief).

*Marilyn Sylvia,* Deputy Attorney General, argued the cause for respondent (*Douglas S. Eakeley,* Acting Attorney General of New Jersey, of counsel and *Carol Johnston,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

Appellants, member insurers of the Ohio Casualty Insurance Group, appeal from three identically worded orders which denied their request for relief from the surtaxes and assessments imposed on insurers by the Fair Automobile Insurance Reform Act of 1990 ("FAIR"), *L.* 1990, *c.* 8, *N.J.S.A.* 17:33B–1 *et seq.* FAIR imposes a 5% surtax on automobile premiums paid in New Jersey for a period of three years and assessments equal to 2.7% of the insurer's net premiums. The assessment is

imposed by the Property Liability Insurance Guarantee Association (PLIGA) and the surtax is administered by the Commissioner of Insurance. Under FAIR, the Commissioner is given discretion to exempt, abate or defer the payment of the surtax and the assessment if payment would place any company in an unsafe or unsound financial condition.

Appellants are all nationwide companies that do a relatively small volume of business in New Jersey. They requested relief from the surtax and assessments on the ground that they will be losing money on their New Jersey business. The Commissioner found, after examining each company's condition as a whole, that they were financially stable and in no danger of insolvency. Appellants do not dispute the Commissioner's assessment of their financial health nationwide. They contend, however, that the Commissioner was constitutionally obliged to examine only their New Jersey operations in determining whether to defer, exempt or abate the taxes. Appellants argue that to base the decision of whether to defer, exempt or abate on the appellants' operations nationwide constitutes a taking of their property, amounts to a tax on extraterritorial values in violation of the due process clause, offends principles of equal protection, and violates the commerce clause.

In our view, *State Farm v. State,* 124 *N.J.* 32, 590 *A.*2d 191 (1991), is dispositive on the issue of confiscation. The Court there held that FAIR requires the Commissioner to authorize premiums that are high enough to assure companies a constitutionally-required fair and reasonable return, notwithstanding certain provisions of FAIR which could be interpreted as flatly prohibiting insurers from including the surtax and assessment in the rate base. *State Farm, supra,* 124 *N.J.* at 61, 590 *A.*2d 191. While one member of the Court expressed "grave doubts about the ability of the Commissioner of Insurance, under present regulations, to guaranty insurance companies a constitutionally-adequate rate of return," *id.* at 66–67, 590 *A.*2d 191 (Garibaldi, J., concurring), the Court was willing to give the Commissioner the opportunity to implement the Act so as to

provide insurers with a fair rate of return. *Id.* at 62–53, 590 *A.*2d 191. Accord, *Matter of Aetna Casualty & Surety Co.,* 248 *N.J.Super.* 367, 387–89, 591 *A.*2d 631 (App.Div.), *certif. denied,* 126 *N.J.* 385, 599 *A.*2d 162 (1991), *cert. denied,* —— *U.S.* ——, 112 *S.Ct.* 1244, 117 *L.Ed.*2d 476 (1992). The Court pointedly noted that its holding as to the facial validity of the surtax and assessment did not preclude an as-applied challenge "in the event that the relief afforded to them under *N.J.A.C.* 11:3–16.11 is either substantively or procedurally inadequate to assure a constitutionally fair rate of return." 124 *N.J.* at 63, 590 *A.*2d 191.

Appellants contend that the Commissioner "violated the due process clause by solely considering Ohio's net worth without separating out the New Jersey operations." They maintain that the failure to grant an abatement results in a tax on extraterritorial values, since the effect of denying an abatement is to siphon off profits from appellant's operations in other states in order to subsidize New Jersey drivers. This contention is without merit.

■ As the Commissioner points out, both the surtax and the assessment are imposed solely on premiums earned by insurers in New Jersey and nowhere else. The 5% surtax is collected "on all taxable premiums collected in this state." *N.J.S.A.* 17:33B–49a. Likewise, the assessment is based on the percentage of an insurer's market share in New Jersey. *N.J.S.A.* 17:30A–8a(9). Thus, there is both a minimal connection between the State and appellants, and a rational relationship between the tax and appellants' New Jersey business, thereby satisfying the demands of due process. *Evanston Ins. Co. v. Merin,* 598 *F.Supp.* 1290, 1304–1311 (D.N.J.1984). It appears to us that appellants have confused the imposition of the tax with procedures for obtaining exemption, abatement or deferral if payment would place any company in an unsafe or unsound financial condition. The vice condemned by the court in *American Ins. Ass'n v. Lewis,* 50 *N.Y.*2d 617, 431 *N.Y.S.*2d 350, 409

*N.E.*2d 828 (1980), relied upon by appellants, taxing a company based on its net worth or accumulated wealth rather than its activities in the taxing state, is not presented in this case.

Appellants argue that consideration of a company's nationwide financial condition deprives multi-state insurers of equal protection of law. Local insurers are favored, argue appellants, because if both a multi-state and a local insurer are losing money in New Jersey, the Commissioner will give tax relief to the local company but not to the multi-state insurer so long as the latter is in a sound financial condition due to profitable business in other states. The Commissioner responds that the exemption provisions treat all insurers equally since all insurers in an unsafe or unsound financial condition may receive relief from the surtax and assessment.

To satisfy the requirements of equal protection it need only be shown that the statutory classification is rationally related to a legitimate State interest. *New Orleans v. Dukes,* 427 *U.S.* 297, 303, 96 *S.Ct.* 2513, 2516, 49 *L.Ed.*2d 511, 516–17 (1976). "When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations." *Ibid.*

Moreover, appellants' premise that local insurers are favored under the exemption scheme is not necessarily true. It is possible that both a local company and a multi-state company could be prospering equally in New Jersey, but the multi-state company would nevertheless be entitled to relief from the assessment and surtax if its losses in other states cause it to be in an unsafe and unsound financial condition. The discrimination assumed to exist by appellants will occur only if the Commissioner sets rates so low that multi-state insurers will have to subsidize their New Jersey business with profits from other states, that is, making insureds in other states subsidize New Jersey's automobile insurance system. In light of the

recent admonition spoken by the Supreme Court in *State Farm, supra,* we will not assume that the Commissioner will do this.

■ Appellants' commerce clause argument rests on the claim that by permitting the Commissioner to examine nation-wide operations in assessing an insurer's financial soundness, FAIR allows the Commissioner to "gain jurisdiction over foreign policy holders, foreign business transactions and foreign insurance premiums," thus extending "protection to local New Jersey insurance carriers at the expense of multi-state insurers." Appellants further argue that FAIR sets up a "discriminatory tax which has the effect of giving local industry a commercial advantage over its out-of-state competition."

We reject appellants' contention for the reasons noted earlier, namely, the surtax and assessments are imposed at the same rate on foreign and domestic insurers alike. The discrimination hypothesized by appellants simply does not exist. Multi-state insurers would be at an unfair disadvantage only if the Commissioner refused to approve rates that were sufficiently high to enable appellants to make a just and reasonable return on their New Jersey business. As we observed earlier, it must be assumed at this point that the Commissioner will adhere to the principles laid down in *State Farm* and will set rates high enough to insure an adequate return.

Finally, by enactment of the McCarran–Ferguson Act, 15 *U.S.C.S.* § 1011 *et seq.,* Congress expressly left to the states the regulation of the insurance business. *See Matter of Plan for Orderly Withdrawal of Twin City Fire Ins. Co.,* 248 *N.J.Super.* 616, 639–40, 591 *A.*2d 1005 (App.Div.), *certif. granted,* 127 *N.J.* 548, 606 *A.*2d 362 (1991).

Affirmed.