257 N.J. Super. 509 (1992)
608 A.2d 965
NEW JERSEY STATE LEAGUE OF MUNICIPALITIES, A PUBLIC AGENCY OF THE STATE OF NEW JERSEY; TOWN OF SECAUCUS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; TOWNSHIP OF SPARTA, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; TOWNSHIP OF BLOOMFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; CITY OF ORANGE TOWNSHIP, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; TOWNSHIP OF SOUTH BRUNSWICK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; TOWNSHIP OF FLORENCE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; PAUL SHALITA T/A QUENTIN GARDENS; DONALD F. MANSEAU AND BARBARA MANSEAU, PLAINTIFFS-RESPONDENTS,
v.
THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued on March 10, 1992.
Supplemental Briefs requested on March 16, 1992.[1].
Submitted May 26, 1992.
Decided June 29, 1992.
*512 Before Judges SHEBELL, SKILLMAN and D'ANNUNZIO.
Daniel P. Reynolds, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General, attorney; Michael R. Clancy, Assistant Attorney General, of counsel; Daniel P. Reynolds, on the brief).
Michael A. Pane argued the cause for respondents.
Lawrence H. Wertheim argued the cause for amicus curiae Community Associations Institute, New Jersey Chapter, Inc. (Greenbaum, Rowe, Smith, Ravin & Davis, attorneys; Benjamin *513 D. Lambert, of counsel; Lawrence H. Wertheim, on the amicus curiae brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
At issue is the constitutionality under the Federal and State Constitutions of an Act requiring municipalities to provide or pay for certain municipal services to condominiums and other "qualified private communities." The Law Division held that the Act was underinclusive, and hence violative of equal-protection guarantees, because it expressly excluded apartment complexes from the class of benefited forms of property ownership, without distinguishing between condominium owners who live in their units and those who rent their units to others. According to the trial court, condominium owners who rent their units to others are similarly situated to apartment owners, and, therefore, the Act was held to unconstitutionally exclude apartment owners without reasonable basis. We reverse and remand.
In February 1990, plaintiffs filed a complaint in the Law Division contesting the validity of that portion of L. 1989, c. 299 which excluded apartment complexes from the definition of those qualified private communities, which the Act required the municipalities to service. After various amendments, the complaint asserted eight theories of constitutional and statutory violations as bases for invalidating the Act:
Count one  Fourteenth Amendment, equal protection;
Count two  Fifth Amendment, deprivation of property without due process;
Count three  equal protection, under the New Jersey Constitution;
Count four  undue financial burden on municipalities;
Count five  New Jersey Constitution's prohibition on "special laws";
*514 Count six  New Jersey Constitution's prohibition on preferential tax treatment;
Count seven  New Jersey Constitution's prohibition on municipal gifts to private entities;
Count eight  abrogation of municipalities' powers including those granted under the Municipal Land Use Law and violation of New Jersey Constitution's prohibition against private or special legislation.
The State answered denying these allegations and asserting that plaintiffs failed to state a claim. The court granted on May 14, 1990 the motion of the Community Associations Institute, New Jersey Chapter, Inc. (CAI) to appear as amicus curiae.
Plaintiffs moved for summary judgment as to all counts except five and eight, and the State moved for summary judgment as to all counts. The motions were argued on July 20, 1990. On November 5, 1990, the Law Division judge issued a letter opinion invalidating the definitional portion of the Act as being underinclusive to the extent it excluded apartment complexes from the benefits extended by the Act.[2] Judgment was entered accordingly. The State appeals from the order of the Law Division.
On January 12, 1990, Governor Kean signed L. 1989, c. 299, later codified as N.J.S.A. 40:67-23.2 to -23.7. The Act, to be effective January 1, 1991, requires municipalities to provide within "qualified private communities" certain municipal services or, in the alternative, to pay for those services. N.J.S.A. 40:67-23.3. Those services include snow removal, street lighting, and the collection of leaves, recyclable materials, and garbage. If a municipality chooses to provide those services within a private community, it must do so "in the same fashion *515 as the municipality provides these services on public roads and streets." N.J.S.A. 40:67-23.3(a). The Act sets up a gradually increasing scale of reimbursement if the services are not provided, ranging from 20% in 1991 to 80% in 1994; in 1995 the municipality must either reimburse the "qualified private community" in full or provide the services itself. N.J.S.A. 40:67-23.6.
The section of the Act critical to the present controversy is N.J.S.A. 40:67-23.2e, defining "qualified private community" as follows:
e. "Qualified private community" means a residential condominium, cooperative, fee simple community, or horizontal property regime, the residents of which do not receive any tax abatement or tax exemption related to its construction, comprised of a community trust or other trust device, condominium association, homeowners' association, or council of coowners, wherein the cost of maintaining roads and streets and providing essential services is paid for by a not-for-profit entity consisting exclusively of unit owners within the community. No apartment building or garden apartment complex owned by an individual or entity that receives monthly rental payments from tenants who occupy the premises shall be considered a qualified private community. [Emphasis added].
The Act was accompanied by the following sponsor's statement:
STATEMENT
This bill would require that a municipality enact ordinances to provide the same services along the roads and streets of a qualified private community as it provides to other residents along its public roads and streets. At the request of a qualified private community, the municipality would be required to reimburse the qualified private community for some or all of the municipal services that it chooses to provide for itself. A qualified private community is a condominium, cooperative, fee simple community, or horizontal property regime comprised of a not-for-profit entity having only unit owners as members, such as a homeowners' association, that is responsible for maintenance of the common areas and providing other essential services.
Current law permits a municipality to provide certain services on roads and streets which are not dedicated and accepted as public highways. This bill makes it mandatory that a municipality provide certain road and street services to qualified private communities. However, at the option of a qualified private community, the municipality is required to reimburse it for municipal services which the community chooses to provide for itself. The effect of this bill will *516 be to help eliminate double payment for some services which the residents of qualified private communities now pay through property taxes and fees to their association. [Emphasis added].
In the Law Division, other sources of legislative history were offered into the record including a statement by the Senate County and Municipal Government Committee, the Legislative Fiscal Estimate, and the transcript of a public hearing on the Act. The only background regarding the apartment-building exception was in a newspaper article offered by plaintiffs, in which the author of the law was quoted as saying that the Act does not discriminate against apartment owners because "there is a distinct difference between condos and apartments[:] ... [apartments] are `profit-making things,' while condos are `someone's home.'"
Plaintiffs offered several affidavits. Two tenants, one of them a named plaintiff, deposed that their rents reflected their landlords' costs of providing such services as garbage collection, snow removal, lighting, and property taxes. The tax assessors of five townships attested to the percentage of condominium (condo) units in their townships that were rented out by their owners. The percentages for the five townships ranged from 21% to 38%. Four officers of solid-waste collection businesses deposed that there was no difference between condo and apartment complexes "as to the volume or type of solid waste generated or the method of collecting, hauling and disposing of same."
The State asserts that the trial court erred in overturning N.J.S.A. 40:67-23.2e, in that the court second-guessed the wisdom of the Legislature in excluding apartments from the definition of qualified private communities. The State argues that the courts are bound to uphold the enactment if the Legislature had any conceivable rational basis for the distinction. The State advances two "reasonable bases" for the distinction: (1) apartments are assessed differently from condos and cooperatives; and (2) condos and cooperatives, unlike apartments, foster the valid goal of individual home ownership. In *517 its brief, amicus CAI supports the State's argument and adds that the trial court engaged in "judicial legislation" by interposing its own view as to the fairness of the act.
The State asserts that condos are significantly different in that each unit is required by statute to be separately assessed as a single parcel, whereas each apartment building is assessed as a total entity. The State also represents that this assessment difference results in a "markedly higher" assessment for a condo complex than for a physically identical apartment building. We decline to accept the assessment difference as a basis for the exclusion of apartments without a plenary hearing at which testimony of tax experts may be heard. We do, however, accept as a rational basis for the distinction the State's premise that condos may be treated differently because they foster the public-policy goal of individual home ownership.
Plaintiffs insist that the Act's distinction between apartment owners and condo owners[3] is irrational because a significant percentage of condo owners also rent their units thus making them similarly situated to apartment owners. Condo owners who rent their units, therefore, receive a benefit that apartment owners do not.
That the Act's main purpose, to relieve condo owners of the burden of paying twice for municipal services, is a valid legislative purpose is beyond dispute. The problem arises because not all condo owners reside in their units. If they did, the Act's differing treatment, justified by the goal of fostering home ownership by providing affordable housing in the form of condos, would be unassailable.
Although most of the condo-owner class are resident owners, the trial judge noted in his letter opinion that according to the 1980 Census over one-fifth of New Jersey condo owners rented *518 their units to others. It appears, therefore, that at least a fifth of condo owners may be considered to be similarly situated to the class of apartment owners. Plaintiffs argue that because the members of the lessor-class of condo owners are substantially and legally equivalent to apartment owners, the Legislature may not benefit condo owners as a class without extending the same benefit to apartment owners.
The trial judge, after reviewing the legislative history as to the aim of the Act, correctly concluded that the Act's purpose was to avoid "double taxation" of condo owners. Further, because there is no "fundamental" right at stake and no "suspect" or "semi-suspect" class, the trial judge properly chose the "rational basis" test to determine whether the Act's exclusion of apartment owners from the benefited class was violative of the equal-protection guarantee. Drew Assocs. of N.J., L.P. v. Travisano, 122 N.J. 249, 258, 584 A.2d 807 (1991). The judge then ruled that the Act was "invidiously underinclusive" in that the perceived evil  double taxation  "falls alike" on both condo owners and tenants of apartments.
Under the rational-basis test of equal protection under both the State Constitution and the Fourteenth Amendment, a statute must be upheld if it is rationally related to a legitimate state interest. Id. at 258-59, 584 A.2d 807. "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification...." Nordlinger v. Hahn, ___ U.S. ___, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992). We are compelled to accord the statute a strong presumption of validity, and the challenger must bear the burden of showing that the act creates a classification that is "palpably arbitrary or capricious." Chamber of Commerce of the U.S.A. v. New Jersey, 89 N.J. 131, 159, 445 A.2d 353 (1982). The challenger must refute all possible rational bases for the differing treatment, whether or not the Legislature cited those bases as reasons for the enactment. Id. We are instructed to uphold the statute if we "can conceive of any reason to justify the *519 classification." Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 227, 486 A.2d 305 (1985). We may not void the statute if the reasonableness of the classification is "fairly debatable." Id.
It is axiomatic that in attempting to remedy an injustice, the Legislature need not address every manifestation of the evil at once; it may proceed "one step at a time." Greenberg v. Kimmelman, 99 N.J. 552, 577, 494 A.2d 294 (1985). Thus, "remedial legislation need not be `all-or-nothing,'[;] ... the Legislature can decide that to start somewhere is better than to start nowhere." Drew, 122 N.J. at 262, 584 A.2d 807. Therefore, it is not necessarily fatal that a law is underinclusive by failing to include some who share characteristics of the included class, so long as there is a rational justification for excluding part of the affected class. Piscataway Tp. Bd. of Ed. v. Caffiero, 86 N.J. 308, 324-25, 431 A.2d 799 (1981), appeal dismissed, 454 U.S. 1025, 102 S.Ct. 560, 70 L.Ed.2d 470 (1981); ADA Financial Serv. Corp. v. New Jersey, 174 N.J. Super. 337, 348, 416 A.2d 908 (App.Div. 1979).
The Legislature in addressing an issue must invariably draw lines and make choices, thereby creating some inequity as to those included or excluded. As long as "the bounds of reasonable choice" are not exceeded, the courts must defer to the legislative judgment. Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 40, 364 A.2d 1016 (1976), appeal dismissed and cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). We may not strike down a law merely because the legislative aim would have been more fully achieved by expanding the class. Robbiani v. Burke, 77 N.J. 383, 392-93, 390 A.2d 1149 (1978). We must determine whether there is a reasonable basis for the Legislature's choice and not substitute our own judgment for that of the Legislature. Drew, 122 N.J. at 260, 584 A.2d 807.
In Drew, 122 N.J. 249, 584 A.2d 807, our Supreme Court upheld an act requiring cooperatives, but not condominiums, to *520 pay the realty transfer tax. The Court held that: "The fact that one property owner chooses to use the cooperative plan of ownership, while another chooses to use the condominium plan of ownership does constitute a difference in the two forms of ownership that warrants different treatment for the purposes of the imposition of the realty transfer tax." Id. at 267, 584 A.2d 807.
In Weymouth Tp. the Court upheld a zoning ordinance that limited mobile homes to those in which the head of the household or spouse was 52 or older. Our Supreme Court held that the age boundary was rationally related to the legitimate goal of providing low-cost housing to the elderly. 80 N.J. at 40-41, 364 A.2d 1016. It acknowledged that the age limit was arbitrary in that some persons meeting the age standard would not experience the decline in income predicted for the elderly; but it was enough that "many persons who reach" that age would meet that criterion. Id. Hence, the law had a rational basis. Id. at 41, 364 A.2d 1016.
Our task here is to decide whether there was any reasonable basis conceivable for the Legislature's decision to exclude apartment owners from the mandatory benefits of the Act, while including all condo owners, even those who rent their units to others.[4] It is not sufficient grounds for invalidation that we may find that the Act's distinction is unfair, underinclusive, unwise, or not the best solution from a public-policy standpoint; rather, we must find that there is no reasonably rational reason for the differing treatment.
In Rubin v. Glaser, 83 N.J. 299, 416 A.2d 382 (1980), appeal dismissed, 449 U.S. 977, 101 S.Ct. 389, 66 L.Ed.2d 239 (1980), our Supreme Court held that the Homestead Rebate Act did not violate the equal-protection clause by denying a rebate to owners of second homes. It noted that the Legislature's *521 purpose was to help taxpayers shoulder the burden of increased property taxes without losing their homes. Id. 83 N.J. at 307, 309, 416 A.2d 382. This public-policy goal is clearly valid as to condo owners who reside in their units. We are unable to say that because not all condo owners are residents of their units it is a sufficiently significant factor to invalidate the Legislature's enactment. Thus, we find no requirement that the statute be struck down because the classifications it creates includes some members who will benefit even though they may not be members of the class that the Legislature hoped to assist, namely, condo owners who use their units as their homes. A classification does not have to be perfect to withstand an equal-protection challenge.
On the proofs presented, we need not consider how large the deviating percentage may be before the law loses its rational basis. The case law establishes that groupings need not be mathematically precise, and need not include all who might have been included or even those who would better achieve the legislative goal. See, e.g., Robbiani, 77 N.J. at 392, 390 A.2d 1149. A statute is not defective merely because it may fail to achieve its goal "in special circumstances or fringe areas." State v. Monteleone, 36 N.J. 93, 99, 175 A.2d 207 (1961). A classification need not be precise or fair in all its ramifications. Weymouth Tp., 80 N.J. at 40, 364 A.2d 1016. It may exclude some who might reasonably be admitted and include some who might reasonably have been excluded. Id.
Although the present enactment groups all condo co-owners without distinguishing between resident and non-resident owners, most condo owners do satisfy the Act's intended aim, in that they live in their units and in the view of the Legislature pay twice for some municipal services. The fact that a number of them do not share those traits does not deprive the Act of all rational basis. The Legislature need not have included all who might have been included, as long as there was some rational basis for its selection. Here, the Legislature could have reasonably *522 decided that condo owners as a group suffer most from the evil of double taxation. Most do live in their units and suffer from the consequences of paying taxes and also having to pay condo fees to cover municipal services provided to other residents without charge.
In Boulevard Apts., Inc. v. Mayor & Coun. of Lodi, 110 N.J. Super. 406, 265 A.2d 838 (App.Div.), certif. denied, 57 N.J. 124, 270 A.2d 27 (1970) (resolution excluding garden apartments from residential dwelling garbage collection) and 399 Lincoln Assocs. v. Orange Tp., 244 N.J. Super. 238, 581 A.2d 1364 (App.Div. 1990) (ordinance contained cutoff of trash collection to residences with over five units), the invalidated provisions established arbitrary classifications which had no "rational basis." In this case the need to foster home ownership is a valid and rational basis for classification. Further, there is clearly a difference in legal status between condo or similar ownership and apartment ownership. See Drew, 122 N.J. at 267, 584 A.2d 807.
We, therefore, conclude that the statute does have a conceivable rational basis, i.e., the goal of encouraging home ownership by making the expense of condo ownership less burdensome.
The judgment of the Law Division is reversed.
SKILLMAN, J.A.D., concurring.
I join in the judgment of the majority upholding the constitutionality of chapter 299 of the Laws of 1989. However, I believe our opinion should expressly state that we do not pass upon the constitutional entitlement of apartment owners and their tenants to be provided the same municipal services which chapter 299 requires to be provided to qualified private communities.
It is firmly established that the failure to make municipal services equally available to all persons in like circumstances upon the same terms and conditions denies equal protection of the law. Reid Dev. Corp. v. Parsippany-Troy Hills Township, *523 10 N.J. 229, 233, 89 A.2d 667 (1952); Boulevard Apartments, Inc. v. Mayor of Lodi, 110 N.J. Super. 406, 411, 265 A.2d 838 (App.Div. 1970). Municipal services may be provided to some and withheld from others only if the disparity in treatment rests upon "real and not feigned differences" in their circumstances. Pleasure Bay Apartments v. City of Long Branch, 66 N.J. 79, 84, 328 A.2d 593 (1974). Applying these principles, we have invalidated municipal legislation which deprives an apartment house or complex of the same right to garbage collection as other property owners. 399 Lincoln Assocs. v. Orange Township, 244 N.J. Super. 238, 581 A.2d 1364 (App.Div. 1990); Boulevard Apartments, Inc. v. Mayor of Lodi, supra. But the Court has upheld a municipal ordinance which limited garbage services to collection from curbside, finding this limitation to be justified by the practical and legal problems presented by on-site collection. Pleasure Bay Apartments v. City of Long Branch, supra.
Therefore, even without the benefit of legislation such as chapter 299, apartment owners and their tenants may be constitutionally entitled to obtain municipal services provided other property owners. Furthermore, the legislative policy judgment to require certain municipal services to be provided to qualified private communities may strengthen an apartment owner's claim of constitutional entitlement to those services, due to the similarities between qualified private communities and apartment complexes with respect to physical lay-out and other conditions.
However, this is not a suit by an apartment owner and his tenants seeking to extend the benefits of chapter 299 to apartments but rather a suit by the League of Municipalities and various municipalities seeking a declaration that the law is invalid in its entirety.[1] I would reject this claim substantially for the reasons expressed in the majority's opinion while preserving *524 the right of apartment owners and their tenants to argue that they are entitled on constitutional grounds to the services which chapter 299 require to be provided to qualified private communities.
NOTES
[1] The supplemental briefs addressed the effect of the Legislature's enactment of L. 1991, c. 213 on July 23, 1991 after the original briefs of the parties had been filed with the court. The constitutionality of this later enactment was upheld by the Law Division and is the subject of a separate appeal. We decline to consider the possible conflict between these two enactments in this appeal.
[2] In his opinion the judge did not rely on the other grounds for relief urged in the complaint. Plaintiffs do not urge that the judgment be sustained on those alternative grounds. We therefore consider these grounds abandoned.
[3] The statutory definition embraces condominiums, cooperatives, fee simple communities, and horizontal property regimes. For convenience, the parties and the court have referred to the entire classification as "condos."
[4] The Act does not preclude the municipalities from providing these services to apartment owners.
[1] Although the named plaintiffs include not only the League of Municipalities and various municipalities but also a person who identifies himself as an apartment owner and two persons who identify themselves as tenants, the only relief plaintiffs seek is a declaration that chapter 299 is "void as unconstitutional" and counsel fees. The plaintiffs who identify themselves as an apartment owner and tenants do not argue, as would be expected, that the exclusion of apartments from the provisions of chapter 299 is unconstitutional, but severable, and therefore that the benefits of the legislation must be extended to apartments. See Mahwah Township v. Bergen County Bd. of Taxation, 98 N.J. 268, 294-95, 486 A.2d 818, cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). Consequently, it appears that these private parties do not control the litigation and that they have been named as plaintiffs solely to avoid any possible issue regarding the standing of the League and the plaintiff municipalities to challenge chapter 299 on equal protection grounds. See Camden County v. Pennsauken Sewerage Auth., 15 N.J. 456, 470, 105 A.2d 505 (1954); Borough of Glassboro v. Byrne, 141 N.J. Super. 19, 23, 357 A.2d 65 (App.Div. 1976), certif. denied, 71 N.J. 518, 366 A.2d 674 (1976).