611 A.2d 1119

NEW JERSEY STATE BAR ASSOCIATION, PLAINTIFF–APPEL-
LANT AND CROSS–RESPONDENT, v. DOUGLAS BERMAN, IN
HIS OFFICIAL CAPACITY AS TREASURER OF THE STATE OF
NEW JERSEY; BENJAMIN J. REDMOND, IN HIS OFFICIAL
CAPACITY AS THE ACTING DIRECTOR OF THE DIVISION OF
TAXATION OF THE STATE OF NEW JERSEY; AND THE NEW
JERSEY AUTOMOBILE INSURANCE GUARANTY FUND, DE-
FENDANTS–RESPONDENTS AND CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued June 2, 1992—Decided August 4, 1992.

140

Before Judges O'Brien, Havey and Conley.

*Frederick B. Lacey* argued the cause for appellant/cross-respondent (*LeBoeuf, Lamb, Leiby & MacRae,* attorneys, *Frederick B. Lacey* of counsel, *David Turetsky, Stephen H. Orel, Maria J. Dittmar* and *Patricia A. Sanders* on the briefs).

*Mary R. Hamill,* Deputy Attorney General, argued the cause for defendants/cross-appellants (*Douglas S. Eakeley,* Acting Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel; *Mary R. Hamill* and *Margaret A. Holland,* Deputy Attorney General, on the briefs).

PER CURIAM.

Plaintiff New Jersey State Bar Association (NJSBA) appeals from a judgment entered in the Tax Court upholding § 67 of the Fair Automobile Insurance Reform Act of 1990 (FAIR Act),[1] *L*.1990, *c*. 8 (*N.J.S.A.* 17:33B–62). Section 67 imposes an annual fee of $100 payable by "each person licensed to practice law in this State who has engaged in the practice of law for at least one year." NJSBA argues that § 67 is violative of the equal protection and due process clauses on its face and as applied, and constitutes special legislation contrary to the constitutions of New Jersey and the United States. It also challenges the provision as constituting an unlawful legislative intrusion into the Supreme Court's exclusive jurisdiction to regulate the practice of law. Respondents cross-appeal, arguing that the Tax Court erred in defining which attorneys are exempt from the § 67 assessment.

In a comprehensive opinion, *New Jersey State Bar Ass'n v. Berman*, 11 *N.J.Tax* 433 (Tax Ct.1991), Judge Lasser sustained the § 67 "tax," finding that it did not violate equal protection or due process guarantees, nor did it violate the separation of powers by infringing upon the Supreme Court's jurisdiction to govern the state courts and state bar. However, the judge rejected the Division of Taxation's application of *R*. 1:28–2 (defining which attorneys are subject to the Client's Security Fund (CSF) assessment) as the standard in determining who is within the attorney class subject to the § 67 tax. Judge Lasser found that the phrases "privilege of practicing certain professions" in § 2h(4) of the FAIR Act, and "each person licensed to practice law in this State" in § 67, taken together, "indicate a legislative intent that the § 67 tax should be paid by all persons holding active licenses who have the privilege of pursuing legal or judicial professions in New Jersey." 11 *N.J.Tax* at 444. From this all-inclusive category, the judge exempted persons

---

[1] *N.J.S.A.* 17:33B–1 to –63.

who have not practiced law for at least one year, holders of inactive licenses (those completely retired from the practice of law and those on full-time active duty with the armed forces, VISTA or the Peace Corps) and those ineligible to practice in New Jersey for failure to pay the CSF fee. *Id.* at 445.

We affirm the judgment insofar as it upholds the constitutionality of § 67. However, we modify the judgment as it defines which attorneys are subject to the § 67 tax, and which are exempt.

The thrust of NJBA's equal protection and due process contention is that there is no rational relationship between the purpose of the § 67 tax and the class sought to be taxed. Its argument, made before the Tax Court and again before us, is that the assessment is both underinclusive and overinclusive in its reach when the purpose of the act, to tax those who have benefited from the Joint Underwriting Association (JUA) system, is considered. It asserts that the tax is underinclusive because other professions and businesses who "benefited" from the automobile insurance system are not taxed, and overinclusive because those attorneys who did not "benefit" from the automobile insurance are taxed. In support of its basic assumption that the purpose of § 67 was to tax those whose benefited from the automobile insurance system, the NJSBA cites the declared findings of the Legislature in sections 2c. and 2d., which provide in pertinent part:

> c. As various legislative or executive initiatives were taken in pursuit of this public purpose, the insurance industry itself, and the businesses and professions that provide goods and services to those involved in motor vehicle accidents, were at the same time altering the way in which they conducted their businesses to respond to a changing business and regulatory climate to ensure that they continued to benefit.
>
> d. It has become increasingly obvious to the Legislature and the public that, as a result, one of the principal goals of this common purpose has not been attained: economy. [*N.J.S.A.* 17:33B–2.]

## I

The principal goals of the FAIR Act were "to reduce insurance costs for most New Jersey drivers, to depopulate the

[Joint Underwriting Association (JUA)]] by switching insureds to the voluntary market, and to create a funding mechanism to pay off the JUA debt." *State Farm Mut. Auto. Ins. Co. v. State of N.J.*, 124 *N.J.* 32, 42, 590 *A.*2d 191 (1991); *see also In re Farmers' Mutual Fire Assur. Assoc. of N.J.*, 256 *N.J.Super.* 607, 610, 607 *A.*2d 1019 (App.Div.1992). The JUA debt was to be paid off through a variety of funding sources, including surcharges for motor vehicle violations, additional assessments and surtaxes on insurers, increased vehicle registration fees, surcharges on automobile insurance premiums and assessment of fees on attorneys, physicians, chiropractors, physical therapists and automobile body repair facilities. *State Farm Mut. Auto. Ins. Co.*, 124 *N.J.* at 43, 590 *A.*2d 191; *see* §§ 63 through 68 (*N.J.S.A.* 17:33B–58 to –63); § 74 (*N.J.S.A.* 17:30A–8a(9) and –8a(10)), and § 76 (*N.J.S.A.* 17:33B–49). Further, the FAIR Act declares that it is in the public interest to provide "through assessments ... temporary assessments for the privilege of practicing certain professions and occupations ... for the funding of the debts and obligations of the [JUA]." *N.J.S.A.* 17:33B–2h(4). *See also* Assembly Appropriations Committee Statement to Assembly Bill No. 1 (*L.*1990, *c.* 8). ("The bill provides for a variety of revenues to enable the State to liquidate the estimated $3.0 billion debt of the JUA"). Indeed, we have recently stated that "the purpose of imposing assessments [under the FAIR Act] is to raise revenue to pay the accumulated debts and obligations of the JUA." *In re American Reliance Ins. Co.*, 251 *N.J.Super.* 541, 553, 598 *A.*2d 1219 (App.Div.1991) (finding no equal protection violation in assessing property and casualty insurance companies under the Act); *see also State Farm Mut. Auto. Ins. Co.*, 124 *N.J.* at 43–44, 590 *A.*2d 191. One of the sources of revenue is the $100 assessment against lawyers under § 67.

With that evident governmental objective in mind, Judge Lasser rejected NJSBA's argument that the subject class consisted of those who "benefited" by providing services to those involved in motor vehicle accidents. 11 *N.J.Tax* at 442. The

judge found that those provisions of the FAIR Act which concerned funding the JUA deficit

> select a broad variety of funding sources—insurance companies, motor vehicle owners, bad drivers, attorneys, physicians, podiatrists, chiropractors, physical therapists and auto body repair facilities. These funding sources are the classes. There is no single class consisting of all those who benefit from the automobile insurance system, as NJSBA contends. [*Id.* at 443.]

We agree. Legislation cannot be invalidated merely by offering evidence that the Legislature was mistaken in its classification. *Minnesota v. Clover Leaf Creamery Co.*, 449 *U.S.* 456, 464, 101 *S.Ct.* 715, 724, 66 *L.Ed.*2d 659, 669, *reh. denied* 450 *U.S.* 1027, 101 *S.Ct.* 1735, 68 *L.Ed.*2d 222 (1981). "Imperfect classifications that are part of a reasonable legislative scheme do not violate the equal protection clause." *Murphy v. Allstate Insurance Company*, 252 *N.J.Super.* 280, 286, 599 *A.*2d 916 (App.Div.1991). As Judge Lasser noted, the class is actually several classes which serve as funding sources for the elimination of the JUA debt. 11 *N.J.Tax* at 442–43. Therefore, the central question is whether there was a rational relationship between the class and the governmental objective.

 Since no fundamental right or suspect class is implicated here, the federal equal protection analysis employs the rational-basis standard. *Drew Assocs. of NJ, LP v. Travisano*, 122 *N.J.* 249, 258, 584 *A.*2d 807 (1991); *Brown v. City of Newark*, 113 *N.J.* 565, 573, 552 *A.*2d 125 (1989). Thus, the challenged classification will ordinarily survive an equal protection attack if it is "rationally related to a legitimate governmental purpose." *Kadrmas v. Dickinson Public Schools*, 487 *U.S.* 450, 458, 108 *S.Ct.* 2481, 2487, 101 *L.Ed.*2d 399, 409 (1988); *American Fire & Cas. Co. v. New Jersey Dep't of Ins.*, 256 *N.J.Super.* 423, 428, 607 *A.*2d 196 (App.Div.1992). That standard demands that the legislative act be "devoid of unreasonableness and arbitrariness and that means selected for fulfillment of policy bear a 'real and substantial relation' to that end[.]" *Drew Assocs. of NJ, LP*, 122 *N.J.* at 259, 584 *A.*2d 807 (quoting *Katobimar Realty Co. v. Webster*, 20 *N.J.* 114, 123, 118 *A.*2d 824 (1955)). Stated differently, the inquiry is whether

there is any conceivable state of facts which would afford a rational basis for the classification. *McKenney v. Byrne*, 82 *N.J.* 304, 316, 412 *A.2d* 1041 (1980). The equal protection safeguard is offended "only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. State of Maryland*, 366 *U.S.* 420, 425, 81 *S.Ct.* 1101, 1105, 6 *L.Ed.2d* 393, 399 (1961).

This rational-basis standard "is the functional equivalent of the due-process requirements of the fifth and fourteenth amendments." *Drew Assocs. of NJ, LP*, 122 *N.J.* at 258, 584 *A.2d* 807. As our Supreme Court stated in *Drew Assocs. of NJ, LP*:

> Under due-process analysis, a statute will survive a challenge if it is supported by a "conceivable rational basis." *Greenberg v. Kimmelman*, 99 *N.J.* 552, 563, 494 *A.2d* 294 (1985). While the equal-protection and due-process clauses "protect against different evils," analyses under those clauses, "while proceeding along parallel lines, may overlap." *Id.* at 562 and 569, 494 *A.2d* 294. *See e.g., Katobimar Realty Co. v. Webster*, 20 *N.J.* 114, 123, 118 *A.2d* 824 (1955) (due process and equal protection demand that exercise of police power be devoid of unreasonableness and arbitrariness and that means selected for fulfillment of policy bear a "real and substantial relation" to that end).... [*Id.* at 258–59, 584 *A.2d* 807.]

 The federal equal protection clause does not require that government treat all persons identically; it requires that differences in treatment of persons similarly situated be justified by appropriate state interest. *Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., Inc.*, 71 *N.J.* 249, 280–81, *republished as corrected*, 80 *N.J.* 6, 364 *A.2d* 1016 (1976), *cert. denied sub nom., Feldman v. Weymouth Tp.*, 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.2d* 373 (1977). Where taxation is concerned, and equal protection is implicated, the states have a large leeway in making classifications and drawing lines. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 *U.S.* 356, 359, 93 *S.Ct.* 1001, 1003, 35 *L.Ed.2d* 351, 354–55, *reh. denied* 411 *U.S.* 910, 93 *S.Ct.* 1523, 36 *L.Ed.2d* 200 (1973); *New Jersey League of Municipalities v. State of N.J.*, 257 *N.J.Super.* 509, 518–20, 608 *A.2d* 965 (App.Div.1992). Hence, specific taxes may be imposed upon different trades and professions without

a precise, scientific uniformity with respect to the composition of the class. *Allied Stores of Ohio, Inc. v. Bowers*, 358 *U.S.* 522, 527, 79 *S.Ct.* 437, 440–41, 3 *L.Ed.*2d 480, 484–85 (1959). *See also In re American Reliance Ins. Co.*, 251 *N.J.Super.* at 554, 598 *A.*2d 1219.

▪ Applying these settled principles, Judge Lasser rejected NJSBA's contention that the class was underinclusive because attorneys had been "singled out" from the host of other occupations and professions who benefited from the automobile insurance system but were nevertheless exempt from the $100 assessment. The judge found:

> that the Legislature has selected certain classes, which derive benefit from the automobile insurance system, and that there is no evidence of an intent that there be a single class made up of all who benefit. This legislative determination may have been prompted by administrative convenience, the ability of members of the class to pay or the degree of benefit. Hospitals, for instance, may have been excluded on the basis of ability to pay. Dentists may have been excluded because of a perceived low degree of benefit. The Legislature may well have been of the opinion that attorneys as a class benefit more from the automobile insurance system than do excluded groups. [11 *N.J.Tax* at 449.]

We agree. Since the evident purpose of the tax is to raise revenue to retire the JUA debt, all that need be shown is that the selection of attorneys for taxation, as opposed to other professions and businesses, was rationally related to that purpose. We endorse the judge's observation that such factors as the ability to pay, degree of benefit from the insurance system and administrative convenience may well have been considered by the Legislature in defining the class or classes subject to the assessment. Moreover, as stated, the attorney "class" is only one of the groups selected from which revenue will be raised to retire the JUA debt. We are therefore in agreement with Judge Lasser that NJSBA has not met its substantial burden of showing that the classification is "wholly irrelevant or unrelated to the achievement of the objective, that the classification is an explicit demonstration of hostile and oppressive discrimination, and has not negated every conceivable basis which may support the classification." 11 *N.J.Tax* at 449.

NJSBA also claims that the § 67 tax violates the equal protection clause because it is overinclusive. It notes that approximately 54.3% of New Jersey attorneys are not engaged in the private practice of law in New Jersey, and of the remaining attorneys in private practice, only a minority are "litigators," a small minority of which are "concerned with automobile negligence suits." NJSBA reasons that since the vast majority of lawyers are not involved in automobile litigation, the tax on all attorneys is not rationally related to the stated legislative goal of taxing persons who benefited from the automobile insurance system.

■ However, as previously stated, the NJSBA misstates the underlying purpose of § 67. It establishes a revenue source, which is a relatively small part of a revenue-generating scheme created for the purpose of retiring the JUA debt. As such, it cannot strictly be deemed a tax on those who have "benefited" from the automobile insurance system. The fact that some members of the burdened class did not directly benefit from the JUA system is not sufficient to render the classification arbitrary or unreasonable. *Cf. Nixon v. Administrator of General Services*, 433 *U.S.* 425, 471, 97 *S.Ct.* 2777, 2804, n. 33, 53 *L.Ed.*2d 867, 908–09 (1977). *See also In re American Reliance Ins. Co.*, 251 *N.J.Super.* at 553, 598 *A.*2d 1219. As already noted, legislative classifications need not be made with "mathematical nicety." *Lindsley v. Natural Carbonic Gas Co.*, 220 *U.S.* 61, 78, 31 *S.Ct.* 337, 340, 55 *L.Ed.* 369, 377 (1911); *see also New Jersey League of Municipalities*, 257 *N.J.Super.* at 521–22, 608 *A.*2d 965. As Judge Lasser observed: "[w]hile some attorneys directly participate in the automobile insurance system, others may benefit indirectly through financial interdependence or a general increase in the need for attorneys, particularly litigators." 11 *N.J.Tax* at 447. Simply because the classification here was not made with "mathematical nicety" does not mean it offends the equal protection or due process clause.

■ NJSBA also argues that § 67 is (1) unconstitutional under Art. I, par. 1 of the New Jersey Constitution; (2) constitutes special legislation; (3) violates the due process clause when applied to persons having no connection with New Jersey and because it is unreasonably vague, and (4) unlawfully encroaches upon the Supreme Court's exclusive jurisdiction over the practice of law in violation of the separation of powers doctrine. We have considered carefully each contention and supporting argument, and reject each contention essentially for the reasons expressed by Judge Lasser in his comprehensive opinion.

## II

■ The constitutional issues aside, our disagreement with the Tax Court's conclusions is in the manner by which it defined the attorneys subject to the § 67 tax. Since the passage of the FAIR Act, the Division of Taxation has engaged in an *ad hoc* creation of exemptions to the tax, despite the fact that the section literally exempts only attorneys admitted less than one year. Initially, the Division took the position that the fee was payable by any attorney who was subject to payment into the CSF pursuant to *R.* 1:28-2 with two exceptions: attorneys who had completely retired from the practice of law in New Jersey, and attorneys with less than one year membership in the bar. *See New Jersey State Tax News* (May/June 1990). Lawyers who draft or revise legal documents, render advice on the law, teach law or serve in the judiciary were not considered completely retired from the practice of law. However, on June 25, 1990, the Acting Director of the Division declared that, in the absence of a definition in the FAIR Act of what constitutes "engaged in the practice of law," the Division would utilize the guidelines of the CSF and would consider only lawyers deemed active under *R.* 1:28-2 as being subject to the § 67 assessment. In late June 1990, the Attorney General's office advised the Chief Justice that judges were exempt from the assessment.

Finally, the Division later granted exemptions to all attorneys admitted to the practice of law for 50 years or more.

As stated, Judge Lasser determined the § 67 tax should be paid by "all persons holding active licenses who have the privilege of pursuing legal or judicial professions in New Jersey." 11 *N.J.Tax* at 444. He disagreed with the conclusion of the Division that it could be inferred that the Legislature intended to adopt the CSF delineation of the attorneys who would be subject to the tax. *Id.* at 445. He concluded that those attorneys who have practiced law in New Jersey for one year, those who have practiced law for 50 years, as well as judges, are included in the attorney class because their licenses are active and they have the privilege of pursuing legal or judicial professions in New Jersey. *Id.* at 445–46. The judge found that those attorneys not subject to the tax are those who have not practiced law for at least one year; holders of inactive licenses either because they are completely retired from the practice of law or because they are on full-time active duty with the armed forces, VISTA or the Peace Corps, or ineligible to practice law in New Jersey because they did not pay the CSF fee. *Id.* at 445.

> *R.* 1:28–2, providing for the CSF, states in pertinent part:
> No holder of a plenary license shall be required to make payment in respect to any calendar year during which he will be (1) on full-time active duty with the armed forces, VISTA or Peace Corps and not engaging in any way in private practice; or, (2) retired completely from the practice of law; but he shall be considered in all respects an inactive New Jersey attorney. Newly admitted attorneys shall not be required to make such payments for the balance of the calendar year of their plenary admission and for the next succeeding calendar year, but they shall be considered in all respects active New Jersey attorneys. Attorneys who have been admitted to practice for fifty years or more shall not be required to make such payment but shall be considered in all respects active New Jersey attorneys.

We concur with Judge Lasser's conclusion that the Division was incorrect when it inferred that the Legislature intended to adopt the CSF delineations. Section 67 contains no reference to the CSF, nor does any other relevant section of the FAIR Act. It would be contrary to the plain language of the statute, for

example, to conclude that attorneys admitted to practice for 50 years are exempt from the tax even though they are presently engaged in the practice of law.

However, we do not agree with the judge's focus on the distinction between inactive and active attorneys as being the dividing line between those attorneys subject to the tax and those exempt. Our reading of § 67 leads us to conclude that the key in determining which attorneys are subject to the tax is to determine which attorneys are "engaged in the practice of law." Resolution of this question necessarily depends on reference to the relevant statutes, court rules and constitutional provisions, keeping in mind, that in construing a statute it is presumed that the Legislature is aware of such existing authority. *Mahwah Tp. v. Bergen Cty. Bd. of Taxation*, 98 *N.J.* 268, 279, 486 *A.*2d 818, *cert. denied sub nom., Borough of Demarest v. Township of Mahwah*, 471 *U.S.* 1136, 105 *S.Ct.* 2677, 86 *L.Ed.*2d 696 (1985).

Generally, the practice of law is not subject to precise definition. *Petition of Soto*, 236 *N.J.Super.* 303, 330, 565 *A.*2d 1088 (App.Div.1989), *certif. denied*, 121 *N.J.* 608, 583 *A.*2d 310, *cert. denied sub nom., Soto v. New Jersey*, 496 *U.S.* 937, 110 *S.Ct.* 3216, 110 *L.Ed.*2d 664 (1990). *R.* 1:21–1(a) focuses on the qualifications and requirements for the practice of law:

> [N]o person shall practice law in this State unless that person ... maintains a bona fide office for the practice of law in this State regardless of where the attorney is domiciled. For the purpose of this section, a bona fide office is a place where the attorney or a responsible person acting on the attorney's behalf can be reached in person and by telephone during normal business hours. A bona fide office is more than a maildrop, a summer home that is unattended during a substantial portion of the year, or an answering service unrelated to a place where business is conducted.

This rule makes clear that those attorneys admitted to practice in New Jersey, who are nonresidents and do not maintain a "bona fide office for the practice of law," are not subject to the § 67 tax because they may not engage in the practice of law. The same can be said for all in-state attorneys who do not maintain a "bona fide office" as defined by the rule. However,

because of the broad definition of "bona fide office," it is clear that New Jersey house counsel fall within the definition.

Other attorneys are specifically barred from engaging in the practice of law. These include sitting Supreme Court justices and Superior Court judges, *N.J. Const.* (1947) art. VI, § 6, para. 6, and full-time Municipal Court judges, *R.* 1:15–1(a); Tax Court judges, *N.J.S.A.* 2A:3A–18, and workers' compensation judges, *N.J.S.A.* 34:15–49. Part-time Municipal Court judges are restricted in the type of practice they can engage in, but are not absolutely prohibited from engaging in the practice of law. *R.* 1:15–1(b). Federal judges are also prohibited from practicing law. *See* 28 *U.S.C.A.* § 454 (1968). *N.J.S.A.* 2A:12–2 provides that the Director of the Administrative Office of the Courts and his employees shall not engage "directly or indirectly" in the practice of law. An attorney who is a clerk or deputy clerk of any court, other than a surrogate or deputy surrogate, or is in the employ of or regularly assigned to a court, judge, or court clerk, "shall not practice in any court[.]" *R.* 1:15–2.

N.J.S.A. 52:17A–3 prohibits the Attorney General from engaging in the "private practice of law." Similarly, the Director of the Office of Attorney Ethics, his counsel and staff are prohibited from engaging in the "private practice of law," *R.* 1:20–2(a), as are the counsel, assistant counsel and staff of the Disciplinary Review Board. *R.* 1:20–4(b). However, as the Attorney General persuasively argues, nothing in the FAIR Act suggests that the Legislature intended "to draw a line between attorneys engaged in private practice and attorneys not so engaged." Since the phrase "private practice of law" does not comport with the statutory language "practice of law," we conclude that attorneys prohibited from engaging in the "private practice" of law are not exempt from the tax.

Although *N.J.S.A.* 2A:158–15.1 bars most county prosecutors from engaging "in the practice of law," we must interpret that language consonant with the clear legislative intent to prohibit prosecutors from engaging in the "private" practice of

law. *See In re Exec. Com'n on Ethical Stand.*, 116 *N.J.* 216, 227, 561 *A.*2d 542 (1989). Clearly, prosecutors engage in the "practice of law" on a daily basis, and thus are subject to the § 67 tax. Indeed, it would be an anomalous result to subject Attorneys General and members of his or her office to the tax, and not county prosecutors.

We agree with Judge Lasser that those attorneys failing to make the requisite CSF payment are exempt from the tax because they are considered "ineligible to practice law." *R.* 1:28–2. However, upon payment of the CSF fee and reinstatement, the attorney shall be liable for the § 67 tax for the current tax year. We also agree that those attorneys who are on full-time duty with the armed forces, VISTA or the Peace Corps are exempt, since they do not engage in the practice of law.

■ The State's assertion that § 67 imposes the tax on those who simply hold a license to practice law, is belied by the very wording of the statute. Section 67 states that the tax is imposed upon "each person licensed to practice law" in New Jersey *"who has engaged in the practice of law for at least one year."* (Emphasis added). Neither do we find merit in the State's suggestion that the Legislature created a presumption that those licensed to practice law are actually engaged in the practice of law. Such a presumption would render meaningless that portion of § 67 which requires attorneys to be "engaged in the practice of law." A construction that will render any part of a statute superfluous or meaningless is to be avoided. *Paper Mill Playhouse v. Millburn Tp.*, 95 *N.J.* 503, 521, 472 *A.*2d 517 (1984) *(citing Abbotts Dairies v. Armstrong,* 14 *N.J.* 319, 328, 102 *A.*2d 372 (1954), quoting *Hoffman v. Hock,* 8 *N.J.* 397, 406, 86 *A.*2d 121 (1952)).

■ Accordingly, we find the following attorneys exempt from § 67 tax: (1) those constitutionally or statutorily barred from the practice of law; (2) those who can show that they do not maintain "a bona fide office for the practice of law" in New

Jersey; (3) those completely retired from the practice of law; (4) those on full-time duty with the armed forces, VISTA or Peace Corps and not engaged in practice; (5) those ineligible to practice law because they have not made their CSF payment, and (6) those who have not practiced law for at least one year.

### III

There remains the question as to whether refunds of the taxes paid by exempt attorneys should be ordered. When a state penalizes taxpayers for failure to remit their taxes in a timely fashion, thus requiring them to pay first and obtain review of the taxes' validity later in a refund action, due process requires the state to afford taxpayers a meaningful opportunity to secure post-payment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional. *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 *U.S.* 18, 37–39, 110 *S.Ct.* 2238, 2251, 110 *L.Ed.*2d 17, 36–37 (1990). This principle, of course, is not directly applicable here since we have rejected the constitutional challenges to § 67.

Nevertheless, when a tax already collected is set aside by judicial decision, the law raises a presumption of refund in order to prevent the state from receiving unjust enrichment.[2] *In re Fees of State Board of Dentistry*, 84 *N.J.* 582, 587, 423 *A.*2d 640 (1980). The primary exception to this rule is where a party, without a mistake of fact, or fraud, duress or extortion, voluntarily pays money on demand which is not enforceable against him. *Id.* at 588, 423 *A.*2d 640. "Voluntary payment of a tax made in the belief that the law imposing it was valid, even where the tax is later declared to be unconstitutional, is paid under mistake of law, thereby precluding recovery of the amount paid." *Continental Trailways v. Di-*

---

[2]Judge Lasser entered a pretrial order requiring all funds collected pursuant to § 67 be maintained in a segregated account.

*rector, N.J. Div. of Mot. Veh.*, 102 *N.J.* 526, 549–50, n. 20, 509 *A.*2d 769 (1986), *cert. dismissed*, 481 *U.S.* 1001, 107 *S.Ct.* 1636, 95 *L.Ed.*2d 195 (1987). However, it logically follows that a tax paid with the belief that the law imposing it is invalid is not paid under a mistake of law, and thus recovery of the amount paid is not precluded. In our view, this is the situation here.

■ At the time the tax was due, the Division of Taxation advised attorneys that penalties for nonpayment were the same as penalties for failure to pay income tax, 5% per annum over the prime rate. While in this case attorneys did not have to pay the tax in order to continue practicing law, this does not mean that they paid the tax voluntarily. It was sufficient that the attorneys were threatened with interest and penalties, and other unspecified action, which led them to pay in order to constitute duress. Moreover, attorneys could reasonably have believed that imposition of this threat would have subjected them to disciplinary action by the Supreme Court, thereby jeopardizing their right to continue practicing law. In addition, as in *Board of Dentistry*, NJSBA properly challenged the tax and did not seek a stay pending judicial review. 84 *N.J.* at 585, 423 *A.*2d 640.

In our view, this is an important similarity which supports an award of restitution in this instance. Accordingly, the Department of the Treasury is ordered to refund to those attorneys who paid the tax and who are among the attorneys deemed exempt by this opinion, upon their application for a refund.

Affirmed in part; modified in part.