NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

```
------------------------------------------------------x
DOREEN A. SCOTT,                        :
                                        :    TAX COURT OF NEW JERSEY
         Plaintiff,                     :    DOCKET NO: 010435-2022
                                        :
         v.                             :
                                        :
DIRECTOR, DIVISION OF TAXATION,         :
                                        :
         Defendant.                     :
                                        :
------------------------------------------------------x
```

Approved for Publication
In the New Jersey
Tax Court Reports

Decided: December 22, 2023.

Doreen A. Scott, plaintiff pro se.

Michelline Capistrano Foster, Deputy Attorney General for defendant (Matthew S. Platkin, Attorney General of New Jersey, attorney).

CIMINO, J.T.C.

## I.    INTRODUCTION

Plaintiff, Doreen A. Scott, filed a complaint with this court challenging the determination of the defendant, Director of the Division of Taxation, disallowing receipt of the earned income tax credit (EITC).

Ms. Scott filed as head of household. Her husband filed as single. Since the Scotts are married and living together, Ms. Scott cannot file as head of household and Mr. Scott cannot file as single. Instead, their tax status is married, either joint or separate. The Director selected married-separate which maximizes the State's

recovery. The Scotts want married-joint which reduces, but does not eliminate, the EITC.

The Director argues taxpayers must file a federal married-joint return to qualify for the credit. The court rejects this contention. Further, barring any specific statutory prohibition, married taxpayers are entitled to select whether they want a tax status of joint or separate. An incorrect selection of tax status, such as head of household or single, does not preclude a married-joint return, nor allows the Director to impose married-separate status.

For these reasons, the Scotts are entitled to the earned income tax credit, albeit somewhat reduced.

II.     STATEMENT OF FACTS

Ms. Scott resides in Winslow Township in Camden County, with her husband and their two children, one of whom is disabled. During the tax years in question, Mr. Scott was battling addiction and was in and out of rehabilitation as well as work.

Ms. Scott filed for the earned income tax credit for 2016 with the assistance of the Rowan University Volunteer Income Tax Assistance Program, otherwise known as VITA. VITA is an important program established by the Internal Revenue Service to ensure low- and moderate-income taxpayers not only file their returns correctly, but receive all tax benefits. See I.R.S. Publ'n 5683 VITA/TCE Handbook for Partners and Site Coordinators 8-9 (Nov. 2022). The program serves the

important policy interest of ensuring low- and moderate-income individuals are full and fair participants in our voluntary taxing system. Ibid. Ms. Scott's return clearly confirms it was prepared through the Rowan University VITA Program. A volunteer accounting student prepared Ms. Scott's return.

In 2016, she had earnings of $16,757. Mr. Scott had earnings of $3,722. Individuals earning $10,000 individually, or $20,000 jointly, are not required to file a New Jersey return. N.J.S.A. 54A:2-4. Ms. Scott filed a return as head of household and Mr. Scott did not file a return. Her EITC is more with head of household status as opposed to married-joint status. Individuals are certainly permitted to maximize their tax credits and minimize their liabilities. However, Ms. Scott is not eligible to file as head of household since she was married and living with her husband.

For 2017, Ms. Scott's return was again prepared by a Rowan University VITA volunteer. Her information carried over from the prior year. She filed as a head of household instead of married and her husband did not file. For 2018, her filing status again carried over when her return was prepared by a volunteer at the Gloucester Township Library with the American Association of Retired Persons (AARP). Her husband did not file. In 2019, her filing status carried over when she filed with the commercial tax preparer, Jackson Hewitt. Her husband filed as single. All the returns indicate the preparer as stated.

The Director conducted an audit and determined Ms. Scott was not eligible to file as head of household since that status does not apply to individuals who are married and living together. The Director then calculated her tax liability based upon the status of married-separate, rendering her ineligible for the EITC and finding additional tax liability.

On the first hearing date, Ms. Scott appeared along with her husband who readily indicated he agrees to married-joint status. With a married-joint return, the Scotts would be able to maintain a claim for the EITC. Mr. Scott had a rough idea what he made from year to year, but did not have complete wage records. The court ordered the Director to produce transcripts of Mr. Scott's income. With this income information, the calculation of the EITC claim with married-joint status could be made along with any offsetting tax liability. The Director produced Mr. Scott's earnings history which was confirmed by Mr. Scott on the record. The Director also produced calculations of liability based upon married-joint status. The court has reviewed the calculations. With a married-joint status, liability is reduced from $7,623 (before interest and penalties) to $3,859.[1]

---

[1] This includes a credit of $761 for amounts already recovered and a debit of $64 for a refund previously received by Mr. Scott.

III.    THE EARNED INCOME TAX CREDIT

A. Federal Effort

New Jersey's earned income tax credit program is rooted in the concordant federal program.    From the late 1960s through the early 1970s, the number of recipients of the federally funded welfare program known as Aid to Families with Dependent Children tripled.    Margot L. Crandall-Hollick, Cong. Rsch. Serv., R44825, The Earned Income Tax Credit (EITC):  Legislative History 2 (Apr. 28, 2022).  Policymakers had concern this and other programs were discouraging work. Ibid.  There was a call for a "work bonus" plan to supplement the wages of poor workers by providing a benefit which effectively increased their wages.  Ibid.  A work bonus plan made its way through the United States Senate in 1972, 1973 and 1974, but did not pass the House until 1975.  Ibid.  Tax Reduction Act of 1975, Pub. L. No. 94-12, § 204, 89 Stat. 26, 30-32.

With passage, the program was renamed the Earned Income Tax Credit. R44825, at 2-3.    As indicated by the Senate Finance Committee report accompanying the bill, the purpose was to provide a "new refundable credit [that] provide[s] relief to families who currently pay little or no income tax."  S. Rep. No. 94-36, at 11  (1975).  Lower income families were hurt by rising food and energy costs and the social security payroll tax on their earnings.  Ibid.  A significant goal of the program was "increas[ing] after-tax earnings, . . . provid[ing] an added bonus

or incentive for low-income people to work, and therefore, should be of importance in inducing individuals with families receiving Federal assistance to support themselves," thereby "reducing the unemployment rate and reducing the welfare rolls." Id. at 11, 33.

The program was amended in 2001 to reduce the inherent penalty for marriage, which had "reduce[d] the size of a couple's [EITC] not only because their incomes [were] aggregated, but also because the number of qualifying children [was] aggregated." Staff of J. Comm. on Tax'n, JCX-8-01, Overview of Present Law & Econ. Analysis Relating to the Marriage Tax Penalty, the Child Tax Credit, & the Alternative Minimum Tax 4 (2001). The "marriage penalty" was further reduced in 2009 through enactment of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, § 1002, 123 Stat. 115, 312. The Federal earned income tax credit is the largest needs tested anti-poverty program that provides cash benefits. Margot L. Crandall-Hollick, Cong. Rsch. Serv., R43805, The Earned Income Tax Credit (EITC): How It Works and Who Receives It 15 (Nov. 14, 2023).

B. State Effort

An initial legislative effort in 1999 provided relief to low-income earners by increasing the income threshold subject to New Jersey gross income tax. L. 1999, c. 260, § 1; N.J.S.A. 54A:2-4. For single individuals, the minimum threshold was increased from $7,500 to $10,000. N.J.S.A. 54A:2-4(a). For those filing married-

joint and head of household, the threshold was increased from $7,500 to $20,000. N.J.S.A. 54A:2-4(b). In addition, for those filing married-separate, the threshold was increased from $3,750 to $10,000. N.J.S.A. 54A:2-4(c).

Shortly thereafter, the State enacted an earned income tax credit program. The Legislature set forth comprehensive findings as follows:

- The federal earned income tax credit has received bipartisan support and has proven to be one of the nation's most effective anti-poverty programs for working families by encouraging work, supplementing earnings and lifting nearly five million people out of poverty each year, approximately half of them children. L. 2000, c. 80, § 1(a); N.J.S.A. 54A:4-6(a).

- The federal earned income tax credit has contributed to a significant increase in labor force participation among New Jersey families. L. 2000, c. 80, § 1(b); N.J.S.A. 54A:4-6(b).

- A New Jersey Earned Income Tax Credit will build upon the federal program and further promote work and job retention by supplementing the incomes of nearly 280,000 low-income working families as they move up the career ladder and remain independent from public assistance. L. 2000, c. 80, § 1(c), (e); N.J.S.A. 54A:4-6(c), (e).

Eligibility for New Jersey's EITC program is patterned after and directly follows the federal earned income tax credit provisions. A claimant receives a percentage of the amount calculated for federal purposes. The statute currently provides:

> A resident individual who is eligible for a credit under section 32 of the federal Internal Revenue Code of 1986 (26 U.S.C. § 32) shall be allowed a credit for the taxable year equal to a percentage [as provided below] of the federal earned income tax credit that would be allowed to the individual or the married individuals filing a joint

return under section 32 of the federal Internal Revenue Code of 1986 (26 U.S.C. § 32) for the same taxable year for which a credit is claimed pursuant to this section, subject to the restrictions [set forth thereafter].

[N.J.S.A. 54A:4-7(a)(1).]

For tax years 2016 and 2017, the percentage is 35% of the federal benefit; 37% for 2018; and 39% for 2019. N.J.S.A. 54A:4-7(a)(2)(i), (j), (k).[2] The Act further provides:

To qualify for the New Jersey earned income tax credit, if the claimant is married . . . the claimant shall file a joint return or claim for the credit.

[N.J.S.A. 54A:4-7(a)(3). See also L. 2000, c. 80, § 2(a)(3)(b) (similar language).]

IV.    THE DISPUTE OF THE PARTIES

This dispute is about New Jersey gross income tax status as it relates to the earned income tax credit. Ms. Scott filed an EITC benefits claim for 2016, 2017, 2018 and 2019 with a status of head of household which maximized the benefit.

There are four general categories of tax status defined as follows:[3]

- Unmarried individual (oftentimes referred to as single) - someone who is not married and without dependents.

- Head of household - unmarried individual (or separated from spouse) with dependents in the household.

---

[2]  For 2020 and going forward, the percentage is 40%. N.J.S.A. 54A:4-7(a)(2)(l).

[3]  There is also qualified widow and estates and trusts. N.J.S.A. 54A:2-1.

- Married-joint – the couple has a joint return.

- Married-separate - each spouse has a separate return.

[N.J.S.A. 54A:2-1. See also I.R.C. §§ 2, 7703.]

Tax status impacts the tax owed since marginal tax rates increase faster for unmarried individuals and those with married-separate status. N.J.S.A. 54A:2-1. For married individuals, tax status impacts EITC eligibility since joint tax status is necessary. N.J.S.A. 54A:4-7(a)(3).

The Director determined Ms. Scott did not qualify for the status of head of household since she lived with her husband, changed her status to married-separate, and disallowed the EITC claim. The Scotts want their tax status changed to married-joint.

"One must be careful not to stray too far into the forest of technical legal reasoning so as to obscure the light of common sense. Common sense should play a part in all court decisions, including those involving the construction of tax statutes." Glaze v. United States, 641 F.2d 339, 344 (5th Cir. Unit B Apr. 1981). Taxation is a practical matter. In re Lichtenstein, 52 N.J. 553, 569 (1968). "'Overpayment of tax may be recovered regardless of whether it resulted from a mistake of fact or of law,' and courts should allow refunds to avoid placing hardship upon the taxpayer, unless the plain language of the section states otherwise." Ibrahim v. Comm'r, 788 F.3d 834, 839 (8th Cir. 2015) (quoting Glaze, 641 F.2d at

343). The same holds true not only for overpayments of tax, but also for adjusting liability of a taxpayer, so the full amount of credit can be realized. This comports with a mandate of our Supreme Court requiring taxing authorities to turn square corners. F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426 (1985). While the explanation set forth below may stray into the forest of technical reasoning, the bottom line is the Scotts qualify for the EITC. The goal of the Legislature in helping working families and their children is furthered by recognizing the Scotts qualify and adjusting their tax liability so they receive their fair share of the EITC.

V. THE NEW JERSEY EARNED INCOME TAX CREDIT DOES NOT STATUTORILY REQUIRE THE FILING OF A FEDERAL JOINT RETURN BY MARRIED PERSONS

The roots of the Director's contention seem to be grounded in the original language of the earned income tax credit which at the time indicated:

> "[a] resident individual with a gross income of $20,000 or less for the taxable year who files as a head of household or surviving spouse for federal income tax purposes for the taxable year, or married resident individuals with combined gross income of $20,000 or less for the taxable year who file a joint return for federal income tax purposes for the taxable year, shall be allowed a credit . . . ."
>
> [L. 2000, c. 80, § 2(a)(1) (emphasis added).]

The Director promulgated regulations interpreting this provision to require "[m]arried resident individuals . . . [to] file a joint return for Federal and [State] gross

-10-

income tax purposes" to establish eligibility.[4]  34 N.J.R. 298(a) (Jan. 7, 2002); N.J.A.C. 18:35-4.3(c) (2002).  See also N.J.A.C. 18:35-4.3(c) (current version).

It is without dispute the Scotts are married in actuality and for tax purposes. According to the Director, a federal married-joint return is a necessity.  The Director argues that since Ms. Scott filed federally as head of household, she is ineligible for the credit.

In 2007, the Legislature expanded the EITC by decoupling it from the $20,000 filing threshold.  In addition, the requirement married taxpayers "file a joint return for federal income tax purposes" was dropped, and they only had to be "eligible for a credit under [the federal earned income tax credit law]." L. 2007, c. 109, § 1(a)(1).[5]

---

[4]  An argument can be made the Legislature did not mean file a federal return with joint status, but a state return that met federal joint status.  The Director seems to have embraced the former.  As set forth, infra, the Legislature later made clear a federal joint filing is not necessary.

[5]  With the 2007 amendments, the pertinent part of the statute then read:

> A resident individual who is eligible for a credit under section 32 of the federal Internal Revenue Code of 1986 (26 U.S.C. § 32) shall be allowed a credit for the taxable year equal to a percentage . . . of the federal earned income tax credit allowed to and claimed by the individual or by the married individuals filing a joint return under section 32 of the federal Internal Revenue Code of 1986 (26 U.S.C. § 32) for the same taxable year for which a credit is claimed pursuant to this section . . . .
>
> [L. 2007, c. 109, § 1.]

In lifting the $20,000 cap, the Legislature could have easily removed the two references to $20,000 and left the federal filing requirement intact. However, the Legislature changed the federal filing requirement to an eligibility requirement incorporating by reference the federal earned income tax credit statute. Federal filing status is no longer dispositive. Thus, taxpayers filing federal unmarried returns, but a state married-joint return are eligible. At the time of the 2007 amendment, the Legislature had recently determined same-sex civil union couples would be eligible for the same benefits of married couples. The change opened the door to same-sex civil union couples to claim the credit despite not being able to file a married return for federal purposes.[6] See Rev. Rul. 2013-17, at 12.

---

[6] On October 25, 2006, the New Jersey Supreme Court decided Lewis v. Harris, 188 N.J. 415 (2006), holding that the equal protection clause of the New Jersey Constitution entitles same-sex couples to the same rights and benefits of married couples. Lewis, 188 N.J. at 457. The Court gave the Legislature the option of amending the marriage statutes or adopting a civil union regime within 180 days of the decision. Id. at 463. On December 4, 2006, a civil union bill was introduced before the Legislature. A. 3787 (2006). The bill passed both houses on December 14, 2006, and signed into law on December 21, 2006. 19 N.J. Legis. Dig. No. 45, at 2, 6; L. 2006, c. 103. Section 92 of the Act provides that:

> Whenever in any law, rule, regulation, judicial or administrative proceeding or otherwise, reference is made to "marriage," "husband," "wife," "spouse," "family," "immediate family," "dependent," "next of kin," "widow," "widower," "widowed" or another word which in a specific context denotes a marital or spousal relationship, the same shall include a civil union pursuant to the provisions of this act.

[L. 2006, c. 103, § 92.]

If the 2007 amendment was not enough, the Legislature amended the EITC statute again in 2010 to further drive home the point federal filing status is not determinative of state EITC eligibility. The statutory language was clarified from "the federal earned income tax credit allowed" to "the federal earned income tax

---

With this change, civil union couples could have the tax status of married (either joint or separate) for New Jersey gross income tax purposes. See N.J.A.C. 18:35-1.6.

However, for Federal tax purposes, civil unions are not recognized. In 1996, Congress approved, and the President signed into law, the Defense of Marriage Act (DOMA). Section 3 of the DOMA provided that:

In determining the meaning of any Act of Congress, or any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife.

[Defense of Marriage Act, Pub. L. No. 104-199, § 3, 110 Stat. 2419, 2419 (1996), invalidated by United States v. Windsor, 570 U.S. 744 (2013), and repealed by Respect for Marriage Act, Pub. L. No. 117-228, § 5, 136 Stat. 2305, 2306 (2022).]

The United States Supreme Court found DOMA unconstitutional in 2013 under the Equal Protection Clause of the United States Constitution. Windsor, 570 U.S. at 774-75. The Internal Revenue Service then allowed same-sex couples who were married to have joint tax status, but still held those entering into a civil union could not. Rev. Rul. 2013-17, at 12. New Jersey has allowed same-sex marriage since 2013. See Garden State Equality v. Dow, 216 N.J. 314 (2013). The IRS persists in holding a civil union is not equivalent to marriage for tax purposes. See, e.g., I.R.S. Publ'n 15 (Circular E) Employer's Tax Guide 4 (Dec. 13, 2022); I.R.S. Publ'n 15 (Circular E) Employer's Tax Guide (Draft) 4 (Nov. 28, 2023).

credit that would be allowed," L. 2010, c. 27, § 1 (emphasis added). The Legislature made clear the federal eligibility terms are merely incorporated by reference into the state EITC law.

The Director proposed regulations on November 5, 2007, to address EITC eligibility of same-sex couples in a civil union. 39 N.J.R. 4559(a) (Nov. 5, 2007). See also 40 N.J.R. 1373(b) (Mar. 3, 2008) (adoption). The regulations now provide a "civil union couple who files jointly may complete a pro forma federal return to be used as the basis for the determination of the State earned income tax credit eligibility and amount." N.J.A.C. 18:35-4.3(f). This change recognized and acknowledged eligibility for the EITC is decoupled from federal tax status. The regulations were later amended to remove matching federal and state status for heads of household and surviving spouse filers. Compare N.J.A.C. 18:35-4.3(b) (2002), 34 N.J.R. 298(a) (Jan. 7, 2002) with N.J.A.C. 18:35-4.3(b), 48 N.J.R. 295(a) (Feb. 16, 2016). Prior to 2007, the statute also required an identical "fil[ing] . . . for federal income tax purposes" for these statuses as well. Compare L. 2000, c. 80, § 2 with L. 2007, c. 109, § 1. Despite the statutory changes decoupling federal status, the regulation still reflects married couples must "file a joint return for Federal and [State] gross income tax purposes . . . ." N.J.A.C. 18:35-4.3(d) (emphasis added).

Regulations of the Director that are inconsistent with the provisions of the statute they interpret are not entitled to deference. Koch v. Dir., Div. of Tax'n, 157

N.J. 1, 8 (1999). Certainly if the Legislature wanted to require the "fil[ing of] a joint return for federal income tax purposes," it would have left the language in place. The Director cannot pick and choose which parts of the Legislative amendment to implement. With the 2007 and 2010 amendments to the statute, the Legislature plainly and unequivocally decoupled eligibility from federal tax status.

The irony of the Director's position of only requiring joint federal returns for married couples is to create unequal outcomes, something the Civil Union Act sought to avoid. Under the Director's implementation of the Act, those in a civil union may be in a better position than married couples to get the credit since they do not need a joint federal return. Certainly, this is not something the Legislature contemplated or desired. Requiring a joint federal return is simply not part of the legislative scheme, nor should it be part of the Director's regulations.

A regulation can also be invalidated on the grounds it violates express or implied legislative policies. G.E. Solid State, Inc. v. Dir., Div. of Tax'n, 132 N.J. 298, 306 (1993). The policy of the EITC is well documented by the Legislature to reduce poverty, reduce unemployment and encourage work. It is not a program geared toward sophisticated parties. Setting up legal obstacles to the benefit through a regulatory morass that is not only inconsistent with the statute, but also inconsistent from one filing status to another (i.e., sometimes filing status has to match, sometimes it does not), does not foster participation in the program. The Scotts are

not entitled to all the monies they received; however, they are entitled to something. The Director determined they are entitled to nothing.

The court recognizes the administrative convenience in most instances of having federal and state tax status align. Convenience does not translate into a blanket policy. Legislative policy has long allowed for divergence of federal and state tax status. Since enactment of the New Jersey gross income tax in 1976, if one spouse is a resident and the other is not, state tax status does not necessarily have to match federal status. N.J.S.A. 54A:8-3.1(d); L. 1976, c. 47, § 54A:8-3.1(d). The Legislature extended the head of household designation in 1990 to non-resident aliens in New Jersey even though the status cannot be used for federal purposes. Compare N.J.S.A. 54A:2-1(c), L. 1990, c. 61, § 12(c) with I.R.C. § 2(b)(3)(A). Since 1993, married individuals who are both non-residents are not always required to use the same status for state and federal returns. N.J.S.A. 54A:8-3.1(h); L. 1993, c. 178, § 3(h). And, in 2006, the divergence in tax status was extended to civil union couples who can have married status for New Jersey gross income taxation while limited to single or head of household for federal income taxation. Compare N.J.A.C. 18:35-1.6 with Rev. Rul. 2013-17, at 12.

To penalize the Scotts with full disqualification strikes a blow against a program designed to help those in their economic situation. Namely, working folks who are looking for a break promised to them by the Legislature when taking on a

job despite its lack of great pay. Denying the credit discourages participation in the workforce, not only through frustration with navigating a complex tax code, but also taking future tax credits until the back credits are repaid with penalty and interest. The Director's draconian approach of full disqualification sends a message it is better to not work, or work under-the-table thereby undercutting other important social legislation such as worker's compensation, unemployment, disability and overtime protections.

## VI. MARRIED TAXPAYERS ARE ENTITLED TO SELECT EITHER JOINT OR SEPARATE STATUS

"[I]f the earned income tax credit claimant is married . . . the claimant shall file a joint return or claim for the credit." N.J.S.A. 54A:4-7(a)(3). Upon audit, the Director changed Ms. Scott's tax status from head of household to married-separate. Ms. Scott, along with the consent of her husband, wants married-joint status. The Director refuses to accede to this request.

Since the inception of the New Jersey gross income tax in 1976, a marital status election provision has provided:

> If the income tax liability of husband and wife is determined on a separate return for federal income tax purposes, they shall each also file a separate return for New Jersey income tax purposes and their income tax

liabilities under this act shall be separate.

[N.J.S.A. 54A:8-3.1(b) (emphasis added).][7]

The Director apparently deems the head of household filing a "separate" return warranting the change to married-separate. However, this argument fails on two grounds. First, the EITC statute indicates "the claimant shall file a joint return or claim for the credit." N.J.S.A. 54A:4-7(a)(3) (emphasis added). Second, head of household is an individual status, not a separate status.

A. Joint Claim

All words of a statute are meant to have meaning and not be superfluous. Spade v. Select Comfort Corp., 232 N.J. 504, 522 (2018). Construing all words of the EITC statute, married taxpayers can file either a joint return or a joint claim for the credit. N.J.S.A. 54A:4-7(a)(3). The marital election provision of N.J.S.A. 54A:8-3.1(b) only applies to a "return," not a "claim." If the Legislature intended to limit the EITC only to those married individuals who file a federal joint tax return, it would have left out the "claim" language which decouples the EITC from the marital election provision. A taxpayer's federal return filing status is not dispositive in determining eligibility for New Jersey's EITC. Even if Ms. Scotts' federal filing as head of household is considered either an individual or separate return, the

---

[7]  The statute also provides if a married-joint return is filed for federal purposes, a joint state return is required. N.J.S.A. 54A:8-3.1(c).

election provision requiring a married-separate state return if a married-separate federal return is filed is not determinative of Ms. Scott's claim.

B. Election Provision Does Not Bar Credit

The New Jersey gross income tax is not patterned after the Internal Revenue Code. Schulmann v. Dir., Div. of Tax'n, 25 N.J. Tax 573, 588 (Tax 2010), aff'd, 423 N.J. Super. 333 (App. Div. 2011). "[W]hen the Legislature intend[s] to incorporate federal income tax concepts, it d[oes] so explicitly." Smith v. Dir., Div. of Tax'n, 108 N.J. 19, 33 (1987). The New Jersey gross income tax explicitly incorporates certain definitions of "filing [status] for federal income tax purposes." N.J.S.A. 54A:2-1(a), (b), (c). The clear intent is to generally follow the statuses as defined by federal law.

"Persons occupying the status of husband and wife are authorized . . . to file either joint or separate returns; that is, they can file as 'married individuals filing joint returns' or 'married individuals filing separate returns.'" Glaze, 641 F.2d at 340. "A married person . . . is not permitted to file a single return." Id. at 342. Ms. Scott could not file as head of household, because she was married and not living apart from her husband. As to Mr. Scott, he could not file as single. The proper tax status for both Ms. Scott and Mr. Scott is either married-joint or married-separate.

Upon audit, the Director chose married-separate, which results in the greatest tax liability to the Scotts and more importantly, the greatest diminution, actually

-19-

elimination, of the EITC. The Scotts appeared before this court and made clear they want married-joint status, which would reduce, but not eliminate, the deficiency.

The return was incorrectly filed as head of household. Such an error by a novice tax preparer seems plausible considering Mr. Scott's income is below the filing threshold. The court does not intend to disparage the service provided by volunteer tax preparers through the VITA program. This program provides invaluable experience to aspiring accountants as well as a service to working families while bolstering confidence in our taxing system through everyone paying their fair share and obtaining all benefits available. See I.R.S. Publ'n 5683, at 8-9.

The Director's position mirrors a prior I.R.S. Revenue Ruling construing a filing as head of household or unmarried (single) as a separate return. See Rev. Rul. 83-183, at 2. The Revenue Ruling interprets I.R.C. § 6013(b)(2), which limits the ability of married taxpayers to change their status to joint when they have made a prior election to file as married-separate. While it is true New Jersey's gross income tax follows the I.R.C. for filing status, the federal election statute, I.R.C. § 6013(b)(2), is certainly not incorporated. However, the analogous separate election provision in the New Jersey gross income tax provides if a taxpayer files a separate return for federal income tax purposes, the taxpayer is bound for state purposes. N.J.S.A. 54A:8-3.1(b). The issue is whether filing as head of household or unmarried individual (single) is considered a separate return.

There are over twenty-five examples of the Internal Revenue Code and the Internal Revenue Service confirming "separate return" means married filing separately. Ibrahim, 788 F.3d at 838, app. at 843-45. "[T]he Code consistently uses 'separate return' to exclusively mean 'married filing separately' . . . ." Id. at 839. "[T]echnical terms, or terms of art, having a special or accepted meaning in the law, shall be construed in accordance with that meaning." Lee v. First Union Bank, 199 N.J. 251, 258 (1999). See also N.J.S.A. 1:1-1. "Separate return" is a term of art that applies to married couples. It is not to be confused with an individual return filed by an unmarried person or head of household.

In Ibrahim, Mr. Ibrahim and his wife were immigrants from Somalia with very limited English skills. 788 F.3d at 835. Mr. Ibrahim's return claimed head of household status which was improper because he was living with his wife. Ibid. After receiving a Notice of Deficiency, he appealed seeking to change his status to married filing jointly to receive a credit and refund. Ibid. The Commissioner prohibited the joint return, asserting a prior election of a separate return. Ibid. The Circuit Court reversed, holding a proper election is necessary to bar a change. Id. at 839. The taxpayer was not barred because head of household is simply an incorrect designation, and a taxpayer cannot elect to do something that is incorrect. Ibid. Thus, the bar to changing an election would not apply. Ibid.

Also instructive is the decision of Camara v. Comm'r., 149 T.C. 317 (2017). Mr. Camara and Ms. Jatta were married. Id. at 318. Nevertheless, Mr. Camara erroneously checked the box for single filing status. Ibid. In a Notice of Deficiency issued to Mr. Camara, the Commissioner changed the filing status from single to married-separate. Ibid. Thereafter, Mr. Camara and Ms. Jatta sought to file a joint return. Id. at 319. The Commissioner asserted that by selecting single, the taxpayer elected to file a separate return. Id. at 320. However, the United States Tax Court found the election only applies where an individual has filed a "separate return" and a separate return does not include a single return. Id. at 333. The court held:

> [w]hen a taxpayer makes an incorrect initial election as to filing status, redetermining that taxpayer's correct tax liability requires a determination as to filing status. That determination differs little (if at all) from any other determination the taxpayer may seek to contest through deficiency procedures. In any deficiency proceeding our task is to review the Commissioner's determination to ensure that the taxpayer pays the correct amount of tax.
>
> [Id. at 331.]

"To treat the issue of a taxpayer's filing status any differently than the issues involving deductions or income items would be arbitrary and without reason. A taxpayer is no less entitled to question [the Commissioner's] determination of filing status than any other determination." Ibid. (citing Millsap v. Comm'r, 91 T.C. 926, 937 (1988)). Overall, both Ibrahim and Camara demonstrate the overarching goal is to reach the correct amount due and owing.

-22-

There are three possible statuses as to married persons: joint, separate or something else. Only joint or separate constitute correct statuses. The New Jersey gross income tax's election statute only addresses a situation where a correct election is made. N.J.S.A. 54A:8-3.1(b), (c) (separate federal requires separate state, joint federal requires joint state). The Legislature could have easily stated all tax statuses except joint mandate a separate return. The Legislature did not do that; rather, they left the issue of an improper election an open question.

Faced with an improper election, the Director chose separate which maximizes revenue potential to the State. The Scotts want joint which allows their participation in the EITC program. The bedrock of our income tax system is self-assessment. Unlike property tax where the government decides value and then bills the amount due, with income tax the taxpayer self-assesses and pays the tax. Compare N.J.S.A. 54:4-23 (property tax) with N.J.S.A. 54A:9-3 (gross income tax). In such a system, the taxpayer has first choice of tax status. There is no doubt the Scotts meet the requirements for a married-joint return. To take away that choice and impose the most draconian outcome constitutes not only a de facto penalty, but also undercuts the important policy goals of the EITC and the Director's obligation to turn square corners. F.M.C. Stores, 100 N.J. at 426. The goal is to tax everyone fairly for what they owe, not use an incorrect status as an opportunity to maximize the State's coffers.

This case is easily distinguishable from <u>Rinier v. Dir., Div. of Tax'n</u>, 273 N.J. Super. 135 (App. Div. 1994), in which the Appellate Division held a married couple which elected to file jointly for federal purposes also had to file jointly for State purposes instead of filing separately. Both filing jointly and filing separately were valid elections since the parties were married. The Scotts failed to make a proper election when they filed either as head of household or single. Their improper election cannot serve to bar them from making a proper election.

The Director also argues the concepts of <u>General Trading Co., Inc. v. Dir., Div. of Tax'n</u>, 83 N.J. 122 (1980), in that:

> [the Supreme] Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not.
>
> [<u>Id.</u> at 136.]

In <u>General Trading</u>, there was an issuance of additional stock which led to tax implications. <u>Id.</u> at 125. The focus of <u>General Trading</u> is upon how a business is organized, and neither the Director nor the courts can undo certain factual business decisions that are made. <u>Id.</u> at 138.

Here, <u>General Trading</u> is simply inapposite. The Scotts were married and lived together. No one is hypothesizing whether it would have been better for them to live apart, or not be married at all. The factual pattern is set. All that needs to be

done is to apply the proper tax status to their situation in light of their incorrect choices in the first instance. The Scotts only seek to have a proper status reflected. The Director simply has no authority to unilaterally select that status for them.[8]

VII.   CONCLUSION

For the foregoing reasons, the liability for over-payment is reduced to $3,859. An order will issue addressing submission of interest and penalties calculations per R. 8:9-3.

---

[8]   This is not to say that in the case of a non-filer, the Director cannot deem a certain filing status.